(No. 14983.—Decree affirmed.)
THOMAS H. GREENFIELD *et al.* Appellees, *vs.* LOUIS LAURIT-
SON, Appellant.

*Opinion filed December 19, 1922—Rehearing denied Feb. 9, 1923.*

1. WILLS—*whether word "children," "issue" or "heirs" means descendants depends on the context of the will.* Whether the word "children," "issue" or "heirs" means children or descendants generally, depends upon the intention of the testator as indicated by the context in which the word occurs or by the language of the entire will.

2. SAME—*words of will must be given ordinary meaning unless it clearly appears a different meaning was intended.* Words and expressions used in a will are to be construed naturally and to be taken in their ordinary, proper and common acceptation, unless it clearly appears in the will that they are used in a different sense.

3. SAME—*the word "children" ordinarily means immediate offspring.* According to its popular signification the word "children" denotes the immediate offspring, and it will not be construed to mean grandchildren unless a strong case of intention or necessary implication requires it.

4. SAME—*when use of the word "issue" does not affect ordinary meaning of word "children."* Where a testatrix, after creating a life estate in her husband, devises the remainder to her "children, the issue of my said husband and myself him surviving," the remainder is to the immediate offspring, and the use of the word "issue" immediately following the word "children" does not enlarge the word "children" to include descendants in every generation from the testatrix.

5. SAME—*when conveyance by life tenant and reversioners conveys fee—act of 1921.* Where a testatrix has given her husband a life estate in certain land with a remainder at his death to their surviving children, a warranty deed by the children and the life tenant will transfer the fee by way of estoppel regardless of the effect of the act of 1921 to prevent the premature destruction of future interests, as the children, as heirs of the testatrix, have the reversion in fee as well as the contingent remainder.

APPEAL from the Circuit Court of McLean county; the Hon. STEVENS R. BAKER, Judge, presiding.

MORRISSEY, SULLIVAN & RUST, (JOHN O. MORRISSEY, of counsel,) for appellant.

WILLIAM R. BACH, for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Ruth Greenfield died testate at Phœnix, Arizona, leaving her surviving Thomas H. Greenfield, her husband, and Ernest G. and Max I. Greenfield, her sons. She died seized in fee simple of 120 acres of land situated in McLean county, Illinois. By her will she disposed of certain property in Arizona and then made the following disposition of her lands in Illinois:

"*Third*—I give, devise and bequeath to my husband, T. H. Greenfield, a life interest in all my property, real, personal or mixed, situated in the State of Illinois, with remainder over at the time of his death to my children, the issue of my said husband and myself him surviving.

"*Fourth*—It is my intention by this will to give, devise and bequeath to my husband, T. H. Greenfield, all property and effects, whether community or otherwise and wheresoever situate, save and except my estate in the State of Illinois, and as to the property in that State I give, devise and bequeath to him a life estate therein, with the right to collect and use the rents and income therefrom, with remainder of said estate over to our children, in equal shares, him, my said husband, surviving."

The two sons are the only children ever born to Ruth Greenfield and are her only heirs-at-law. December 5, 1918, her will was admitted to probate in the State of Arizona, and thereafter, on August 12, 1921, it was admitted to probate in McLean county, Illinois. December 11, 1919, a contract was made whereby Thomas H., Ernest G. and Max I. Greenfield agreed to sell, and Louis Lauritson agreed to buy, the 120 acres of land in McLean county for the sum of

$51,000. The contract recited the death of Ruth Greenfield and the terms of her will, and then recited that "by reason of the fact that said Max I. Greenfield is not yet twenty-one (21) years of age, and therefore incapable of making valid deed, free from the right to avoid same by the laws of the State of Illinois, although he is duly emancipated and competent to contract in the State of Arizona, * * * said vendors will not be able to merge the life estate and contingent remainder created by said will thoroughly and effectually until said Max I. Greenfield arrives at the age of majority, which will be on August 11, 1921." The vendors bound themselves "to make, execute and deliver any and all conveyances and instruments necessary to pass and convey to said second party good, merchantable title in fee simple to said premises immediately after the arrival at majority of said Max I. Greenfield." • Upon the furnishing of an abstract of title showing good merchantable title in the premises and the tender of a warranty deed the vendee agreed to pay the entire purchase price. The sale was to be completed on or before October 1, 1921. In due time the vendors furnished a complete abstract of title to the premises, and August 18, 1921, the attorney for the vendee rejected the title on the ground that an act concerning future interests, approved July 2, 1921, which provides "that no future interest shall fail or be defeated by the determination of any precedent estate or interest prior to the happening of the event or contingency on which the future interest is limited to take effect," prevented the destruction of the contingent remainder created by the will in question, thereby preventing the vendors from conveying to the vendee a good merchantable title in fee simple to the lands in question. October 1, 1921, the vendors tendered a good and sufficient warranty deed duly executed and acknowledged by them, but the vendee refused to accept the instrument or to pay the purchase price. Thereupon the vendors filed in the circuit court of McLean

county their bill praying specific performance of the contract. The vendee answered this bill, denying "complainants were together seized in fee simple of the premises described in the bill of complaint," and averred "that said premises were and are subject to the contingent remainder and future interest created by the will of Ruth Greenfield." He further avers that Max I. Greenfield was a minor when the contract was executed and that the contract was therefore not mutual. He avers that he has not paid the purchase money, and "that he is not bound to pay same because his vendors have not been and are not now able to convey to him a good merchantable title in fee simple, free from reasonable doubt or uncertainty." He "admits that he was on October 1, 1921, ready and willing to perform said agreement on his part in case complainants could then have made him a good and sufficient title to said premises," and that he claimed then, and now claims, that the vendors are not able to convey such title by reason of the act concerning future interests above quoted. The chancellor decreed specific performance, and this appeal followed.

The language used by testatrix is clear and unambiguous. By her will she gave to her husband a life estate and to such of her children as survived her husband the remainder in fee. It is agreed that the remainder is contingent and that it will not vest until the death of the life tenant, and then only in the event that the persons named in the will to take survive the life tenant. Appellees contend that the two sons, Ernest and Max, are the only persons who can take as remainder-men, while appellant contends that the word "children," taken in connection with the word "issue," used in the third clause of the will, enlarges the word "children" to include descendants in every generation from testatrix,—that is, children, grandchildren, and so on. Whether the word "children," "issue" or "heirs" means children or descendants generally, depends upon the intention of the testator as indicated by the context in which it oc-

curs or by the language of the entire will. Words and expressions used in a will are to be construed naturally and to be taken in their ordinary, proper and common acceptation, unless it clearly appears in the will that they are used in a different sense. According to the popular signification of the word "children" it denotes the immediate offspring, and will not be construed to mean grandchildren unless a strong case of intention or necessary implication requires it. (*Arnold* v. *Alden,* 173 Ill. 229.) The language used by the testatrix so clearly shows that she used the word "children" to mean children that there is no room for doubt. There is not the slightest uncertainty in the language used, and it would be doing violence to the language to give the word "children" a meaning different from that commonly given it. The word "issue" is used in apposition to the word "children," and does not in any sense enlarge the meaning of the word. The evidence shows, without contradiction, that Ernest and Max were the only children ever born to testatrix and that they are her only heirs-at-law. At her death the reversion in fee in the lands in question descended to them, and will remain in them until the contingency happens, if it ever does, to take it out of them. (1 Fearne on Remainders, sec. 354; *Harrison* v. *Weatherby,* 180 Ill. 418; *Peterson* v. *Jackson,* 196 id. 40; *Bender* v. *Bender,* 292 id. 358.) Ernest and Max are not merely the contingent remainder-men, but they are the heirs of the testatrix and the owners of the reversion in fee simple. The fee will remain in them as heirs unless their father dies leaving one or both of them surviving, in which event the fee will vest in the survivor or survivors as remainder-men under the will. The combined estates of Thomas, the life tenant, and Ernest and Max, the remainder-men and reversioners, amount to a fee simple estate, and a warranty deed duly executed by them and their wives, if any, conveys to appellant a fee simple title. The life estate and the reversion in fee are conveyed by the deed, and if the contingency

happens which would vest the remainders, the grantors and their heirs or subsequent grantees will be estopped by the covenants of warranty from asserting title. Appellant's only objection to the title was that the 1921 act concerning future interests made it impossible for appellees to convey to him a fee simple title, and by his answer he says that on October 1, 1921, he was ready and willing to perform the contract on his part if appellees could have made him a good and sufficient merchantable title to the lands in question. The deed tendered by appellees met this requirement, and the chancellor properly directed that the contract be performed.

The decree is affirmed.    *Decree affirmed.*