CORA B. WHITTAKER *et al.* Appellees, *vs.* FANNIE H. PORTER, Appellant.

*Opinion filed April 23, 1926—Rehearing denied June 3, 1926.*

1. WILLS—*when, only, will cross-remainders be implied.* Cross-remainders will be implied in a will only where the intention of the testator, as shown by a consideration of all the terms of the will, requires it.

2. SAME—*testator is presumed to have intended to dispose of all his property.* There is a presumption that the testator intended to dispose of his whole estate by his will, and a construction which will result in even partial intestacy will not be adopted if a different construction is permissible.

3. SAME—*when devise of income is gift of land itself.* Where a testator makes a direct devise of the income from all his real estate without providing for the creation of a trust the devise is a gift of the land itself.

4. SAME—*when devises do not create cross-remainders.* A devise by a testator to his wife for life and then to his two living daughters equally, as tenants in common, with a further devise over "upon the death" of the daughters to their children, "to be shared equally between the said children," and a similar devise in the will of the testator's wife disposing of all her property, do not create cross-remainders in favor of the survivor of the two daughters, but the children of each daughter take the remainder in fee simple after the particular estate in said daughter; and the words "to be shared equally between the said children" of the two daughters, naming them, do not indicate an intention of a division *per capita* after the death of both daughters.

5. SAME—*when remainder is vested.* An unconditional devise of a remainder, upon the death of a life tenant, to an ascertained

person or class of persons is an absolute gift and is vested at the death of the testator, the possession, only, being postponed because of the life estate.

6. SAME—*when remainders are vested subject to interests of after-born children.*  A devise to the testator's two daughters as life tenants in common, with remainder upon their death to their children, creates a vested interest in the living children of each daughter in an undivided half in fee remaining after the death of said daughter, but each of the estates in remainder is subject to be opened up and diminished in quantity by the birth of other children to the respective life tenants.

7. PARTITION—*when remainder may be partitioned between two groups of remaindermen.*  Where a devise is to two daughters as life tenants in common with remainder to the children of each daughter, partition may be had of the common life estate, and the estate of one group of remaindermen being an undivided half and of the other group the other undivided half, each group is entitled to have its half set off in severalty; and the mere fact that the quantity of the interest of the various members of the respective groups cannot be ascertained on account of the remainder being liable to be opened up to let in after-born children constitutes no legal objection to setting apart one-half to each group.

8. SAME—*when after-born children are bound by decree in partition.*  Where partition is had between two groups of remaindermen, whose interests in remainder as children of two life tenants in common are subject to be opened up to let in after-born children, the decree will be binding on said after-born children, as their rights, when they come into being, will be the same as those of the remaindermen who are made parties to the suit.

9. SAME—*mortgage must be considered in partition decree.*  A decree of partition of an estate in remainder between two groups of remaindermen should take into consideration a mortgage on the property, and where the mortgage is past due the decree should provide for its payment in such manner that the incumbrance shall be borne equally by the two groups of remaindermen.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

JUDSON STARR, and HERRICK & HERRICK, for appellant.

ROBERT H. LOVETT, and WALTER A. CLINCH, for appellees.

321—24

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Benjamin F. Hamilton executed his will on November 1, 1915, and died on December 24 in the same year. He left surviving him his wife, Elizabeth, and his two daughters, Cora Belle Whittaker and Fannie H. Porter, who were his only heirs. He owned about 400 acres of land, and he disposed of all his property in the following words:

"*Second*—After the payment of such funeral expenses and debts I give, devise and bequeath to my wife, Elizabeth Hamilton (in case of her survival of the testator) I give, devise and bequeath the income from all the real estate that I may die possessed of. Upon the death of my wife, Elizabeth, I direct that the income from all said real estate be equally divided between my daughters, Cora B. Whittaker, of Brimfield, Ill., and Fannie E. Porter, of Hume, Ill., and upon the death of my daughters above mentioned, said property is to become the property of their children to have and to hold as they deem best, and the property to be shared equally between the said children of Cora B. Whittaker and Fannie E. Porter. After the payment of all my just debts and expenses above mentioned, I direct that all my personal property and belongings be equally divided between my daughters, Cora B. Whittaker and Fannie E. Porter."

Mrs. Hamilton executed her will on April 19, 1916, and died on March 31, 1918, leaving her two daughters, Mrs. Whittaker and Mrs. Porter, as her heirs. The will disposed of her property as follows:

"2nd—I hereby direct that all my just debts and funeral expenses be paid as soon after my death as conveniently may be.

"3rd—I hereby bequeath all the personal property of every name and nature that I may die possessed of to my daughters, Cora Belle Whittaker and Fannie H. Porter,

each of whom is to share equally in such property, and I further request that the division of such property be made as soon after my death as can be conveniently.

"4th—I devise all the real estate that I may die possessed of to my daughters, Cora Belle Whittaker, of Brimfield, Ill., and Fannie H. Porter, of Hume, Ill., for their use during their lifetime, each to share equally, upon the death of my daughters said real estate is to become the property of their children, to be shared equally, they to have full power to do with such lands such as they deem best."

Mrs. Hamilton also owned about 400 acres of land, 160 acres of which she had bought after she made her will, and it was subject to a mortgage which she had executed to Charles W. Winne, trustee, for $11,200. Mrs. Whittaker had two daughters, Mabel Catton and Gwendolen Whittaker. Mrs. Porter had six children. On December 3, 1918, Mrs. Whittaker and her two daughters filed a bill in the circuit court of Peoria county for the partition of all the land of both Mr. and Mrs. Hamilton, making Mrs. Porter and her husband, Grant W. Porter, and their five children then living, defendants, one of their sons having died after the death of his grandmother, leaving his brothers, sisters, father and mother as his heirs. During the pendency of this suit two other children of Mr. and Mrs. Porter have died, leaving two brothers, a sister and their father and mother as their heirs. Answers were filed, the cause was referred to a master, who made his report, the cause was heard by the court on objections to the report, and a decree was entered construing the wills of Mr. and Mrs. Hamilton and ordering partition of the premises, from which Mrs. Porter has appealed.

The contention of the appellees, the complainants, is that each of the wills devised to each of the daughters a life estate in the undivided half of the land of the testator or testatrix, with remainder in fee simple to her children. The

contention of the appellant is that each will devised an estate for life to the two daughters with cross-remainders for the life of the survivor, with contingent remainder, after the death of the survivor, to all the children, to be divided among them *per capita.*

"Cross-remainders are remainders which, after the limitation of particular estates to two or more persons either in undivided shares in one piece of land or in separate pieces of land, are so limited that upon the expiration of the particular estate of any one of such persons, the right to the possession of that share, which was previously vested in him or his successor in interest, will be vested in the other or others of such persons or his or their successors in interest, with the result that finally the right of possession will be vested exclusively in one of such persons or his successor in interest as ultimate remainderman, the estates of the others having come to an end." In a deed cross-remainders can be created only by express limitations, but in a will they may be implied. (I Tiffany on Real Prop. sec. 143; *Addicks* v. *Addicks,* 266 Ill. 349.) They will be implied only where the intention of the testator, as shown by a consideration of all the terms of the will, requires it. In case of a devise to A and B and a gift over after the death of both of them to C, cross-remainders are implied, for otherwise, upon the death of A before B, the interest which A had would be terminated by his death and would remain undisposed of by the will until B's death, since C, the remainderman, cannot take anything until after the death of both A and B. There is a presumption that the testator intended to dispose of his whole estate by his will, and a construction which will result in even partial intestacy will not be adopted if a different construction is permissible. Therefore the law implies cross-remainders in the case supposed, and the survivor of the two succeeds to the deceased co-tenant's interest until the expiration of the term. In *Doe* v. *Webb,* I Taunt. 234, whether or not there were

cross-remainders was held to be a question of the testator's intention, whether or not he intended the whole estate to go over together to the ultimate taker as a whole. The rule announced was summarized in Jarman on Wills, (vol. 2, 5th Am. ed. 361,) and is quoted in *Lombard* v. *Witbeck*, 173 Ill. 396, on page 410, as follows: "You must ascertain whether the testator intended the whole estate to go over together. If you once found that to be intended, you were not to let a fraction of it descend to the heir-at-law in the meantime. You were to assume that what was to go over together, being the entire estate, was to remain subject to the prior limitations until the period when it was to go over arrived." The rule was also announced in *Hungerford* v. *Anderson*, 4 Day, (Conn.) 368, in these words: "In order to constitute a cross-remainder by necessary implication, there must appear in the will an intention that no person shall inherit any part of the estate or take it by way of remainder as long as any of the devisees, or any of their issue to whom it is given, are alive." *Addicks* v. *Addicks, supra,* was such a case.

While the language of the two wills in this case is not identical there is no difference in their meaning. Each gave to the two daughters a life estate in the land devised as tenants in common. Mrs. Hamilton's will in terms devised all of her real estate to her daughters for their use during their lifetime. Mr. Hamilton's will directs that the income from all his real estate be equally divided between his daughters. He created no trust but gave the income directly, and this is a gift of the land itself. *Zimmer* v. *Sennott*, 134 Ill. 505; *Mettler* v. *Warner*, 243 id. 600; *Schmidt* v. *Schmidt*, 292 id. 275.

The language by which the remainder is devised by the two wills to the daughters' children is substantially identical. There is no difference in meaning. There is some superfluous use of language which does not change in any way the effect of the words used to create a remainder in

fee in the children of each daughter. After the expiration of the life estate given to their mother the language of each will provides that upon the death of the daughters the real estate is to become the property of their children, to be shared equally.

In *Fussey* v. *White,* 113 Ill. 637, the will created a trust of the residue of the testator's estate and directed the payment of the income during the life of his widow, and then provided, "that upon the decease of my wife said property be held for the use and benefit of my said children or their heirs, share and share alike, it being my desire that each one of them, or their heirs, shall have and receive one-half of the income therefrom, and that upon their decease their children to have and receive one-half part or portion thereof, or in case they, or either of them, leave no children or descendants of a deceased child or children, then that the whole go to the children or descendants of a deceased child or children of my other child." It was held that the two children of the testator, after the death of his widow, took a life interest as tenants in common and that their interest was in the income, only, but that upon their decease their children took an interest in the property and not in the income, only, and upon the death of either, his or her children would take one-half of the property immediately, without waiting for the death of the testator's other child, the court saying: "In such a case the court will not construe the will as postponing the distribution of every part until the death of the surviving tenant for life unless an intention so to do is clearly indicated.—3 Jarman on Wills, 16." It was further said: "The construction is very well settled that in such cases 'upon their decease' means upon their respective deaths. 'It seems clear that a gift to A and B, as tenants in common, for their lives, and then at their death or at their deaths, or at the death of A and B, to their children, goes, upon the death of each tenant for life, to

his children.'—Theobald's Law of Wills, 254, and cases there cited."

*Doe* v. *Webb, supra,* was a devise by the testatrix to her three daughters and the heirs of their bodies, as tenants in common and not as joint tenants, and in discussing its effect it is said: "Much stress has been laid on the word 'respectively' by judges of great name. How the use of that word could make any difference in construing the meaning of the testatrix it is difficult to discover, for if the word is omitted the sense continues the same. A devise to two as tenants in common and to the heirs of their bodies must necessarily mean to the heirs of their respective bodies." So a devise to the two daughters for life, as tenants in common, and upon the death of the daughters the property to become the property of their children, must necessarily mean of their respective children.

In Jarman on Wills (vol. 3, 5th Am. ed. 16,) it is said: "The court will not construe the will as postponing the distribution of every part until the death of the surviving tenant for life unless an intention so to do is clearly indicated. Although the gift in remainder is in terms of the whole fund, and appears, therefore, to have a simultaneous distribution in view, yet if a tenancy in common is more consistent with the general context it will be established, especially in favor of children, in spite of the apparently antagonistic terms. And this construction is readily made where, after the gift to several for life, the remainder is not 'after their death' but 'at their death,' for the literal meaning, viz., the simultaneous death of all, could not have been contemplated, and 'at their respective deaths' is a meaning more likely to suit the intention than 'at the death of the survivor.'" In support of this statement are cited in the note the cases of *Arrow* v. *Mellish,* 1 DeG. & S. 355; *Willes* v. *Douglas,* 10 Beav. 47; *In re Laverick's Estate,* 18 Jur. 304; *Turner* v. *Whittaker,* 23 Beav. 196; *Archer*

v. *Legg,* 31 id. 187; *Wills* v. *Wills,* L. R. 20 Eq. 342. These cases fully sustain the text.

In *Turner* v. *Whittaker, supra,* the testator bequeathed an annuity of £50 a year to his wife for her life and directed his executors to place in the funds sufficient stock to secure the annuities. The will proceeded: "At the death of my beloved wife, Elizabeth Turner, I desire that the annuity held by her shall be equally divided between my sons, Edward and Alfred, but not the principal, that I bequeath to their children, to be divided equally among them at the death of my sons, Edward and Alfred Turner." The widow died. Some years later the son Alfred died leaving four children. His brother, Edward, who survived him, had six children. The question was whether the moiety of the fund was divisible on the death of Alfred or not until the death of Edward and whether the children of Edward and Alfred took *per capita* or *per stirpes,* and it was held that the children of Alfred were entitled to half the principal sum. The other cases equally support the proposition, and cases to the same effect are: *Taniere* v. *Pearkes,* 2 Sim. & Stu. 383; *Milner* v. *Aked,* 6 Wkly. Rep. 430; *Bool* v. *Mix,* 17 Wend. 119; *Gardiner* v. *Savage,* 182 Mass. 523; *Stoutenburgh* v. *Moore,* 37 N. J. Eq. 63; *Woolston* v. *Beck,* 34 id. 75; *Doe* v. *Jackson,* 5 Ind. 283.

The language of these two wills is ambiguous, and if the case were one of first impression the construction of them would not be free from difficulty. The form of the devises is, however, substantially the same as has been used in many wills which have been the subject of adjudication, by which the meaning has become well established. Under the statute in force at the times when these wills were executed a conveyance or devise of an estate to two or more persons, without restrictive or explanatory words, constituted the grantee's tenants in common and not joint tenants, contrary to the rule of the common law that it is necessary, in order to create a tenancy in common, to add exclusive or explana-

tory words, so as to expressly limit the estate to the grantees to hold as tenants in common and not as joint tenants. (*Mette* v. *Feltgen,* 148 Ill. 357.)    Both wills in the light of adjudicated cases clearly devise estates for life to the two daughters as tenants in common, with remainder in fee after each daughter's life estate to her children in equal parts.    That is the fundamental intention of both wills and their only intention.    The additional words purporting to grant power to have and to hold and to do with such lands as the daughter's children deem best, and the addition in the will of Benjamin F. Hamilton, after the words, "to be shared equally between the said children," of the words, "of Cora B. Whittaker and Fannie E. Porter," have no effect to add to or detract from the fee simple estate devised, not because the testator and testatrix were without power to impose such lawful limitations as they chose, but because the language used does not indicate an intention to impose any limitation or to modify in any way the well settled meaning of the other words used.    The elaborate discussion of these phrases in the appellant's brief, by which it is sought to show that they do modify the meaning of the language, serves only to darken counsel by words.    Since the wills devise an undivided half of the land to each daughter for life with a remainder in fee after each daughter's life estate to her children, argument as to cross-remainders or as to division *per capita* or *per stirpes* is unimportant.

An unconditional devise of a remainder, upon the death of a life tenant, to an ascertained person or class of persons is an absolute gift and is vested at the death of the testator, the possession, only, being postponed because of the life estate.    (*Lynn* v. *Worthington,* 266 Ill. 414; *Carter* v. *Carter,* 234 id. 507; *Lancaster* v. *Lancaster,* 187 id. 540; *Knight* v. *Pottgieser,* 176 id. 368; *Hinrichsen* v. *Hinrichsen,* 172 id. 462; *Grimmer* v. *Friederich,* 164 id. 245; *McCartney* v. *Osburn,* 118 id. 403; *Santa Clara Female Acad-*

*emy* v. *Sullivan,* 116 id. 375.) Each of the daughters of
the testator and testatrix and her children were therefore
seized of an undivided half of all the lands in fee,—the
daughter of an estate for life and the children of the re-
mainder in fee. Each of the estates in remainder was sub-
ject to be opened up and diminished in quantity by the birth
of other children to the respective life tenants. (*Cheney* v.
*Teese,* 108 Ill. 473; *Field* v. *Peeples,* 180 id. 376; *Dustin*
v. *Brown,* 297 id. 499; *Weberpals* v. *Jenny,* 300 id. 145;
*Deem* v. *Miller,* 303 id. 240.) The remainders, while vested
in the children already born to the life tenant, are contingent
in quantity until the death of the life tenants because of
the possibility of the birth of other children, who will have
a right to share in the estate. Since it is therefore impos-
sible to ascertain the number of shares into which the estate
must be divided or the quantity to which any remainder-
man may be entitled, partition cannot be made of the es-
tate in remainder. (*Richardson* v. *VanGundy,* 271 Ill. 476;
*Dustin* v. *Brown, supra.*) Partition may, however, be made
of the life estate, and in a case where the estate of one
group of remaindermen is one undivided half and the es-
tate of another group of remaindermen is the other undi-
vided half of the property, the mere fact that the quantity
of the interest of the various members of the respective
groups, as among themselves, is unascertainable constitutes
no legal objection to setting apart to each group one-half
of the lands owned in common if either group desires it.
The decree construes the wills in accordance with the views
expressed in this opinion, finds the interests of the parties
accordingly, and further finds that it will be to the best in-
terest of the children of Cora B. Whittaker, and of Cora B.
Whittaker herself, to have their interest set off together in
one or more parcels of the real estate if a partition thereof
is made, and the court orders that if partition be made, the
interests of Cora B. Whittaker, Mabel Catton and Gwendo-
len Whittaker be set off together, and that the interests of

Fannie H. Porter and her husband, Grant W. Porter, and her three surviving children, be set off together. Commissioners were appointed and directed to go upon the premises and if they were susceptible of division to make partition thereof, allotting the several shares to the respective parties according to their respective rights and interests as adjudged by the court. This is in accordance with section 23 of the Partition act, which authorizes several parties interested in premises to have their shares set off together if they shall so elect. It is impossible to make partition between the individual remaindermen, but each life tenant is entitled to partition and each group of remaindermen is entitled to have its share set off in severalty. This decree will be binding on the remaindermen who are parties to the suit and also on any who may be born hereafter, for such after-born grandchildren of the testator and testatrix will have the same rights as those now living who have been made parties to the suit and their rights will have been protected by the decree in the same way and to the same extent. *Hale* v. *Hale,* 146 Ill. 227; *Dole* v. *Shaw,* 282 id. 642; *Longworth* v. *Duff,* 297 id. 479; *Weberpals* v. *Jenny, supra; Cary* v. *Cary,* 309 Ill. 330.

The decree makes no mention of the mortgage for $11,200 on 160 acres of the land. It was error to decree partition without taking into consideration this mortgage.

The decree will be reversed and the cause remanded, with directions to the circuit court to re-enter the decree with a modification providing for the payment of the mortgage which is past due, in such manner that the incumbrance shall be borne equally by the Whittaker interests and the Porter interests.

*Reversed and remanded, with directions.*