RAYMOND C. ADDICKS *et al.* Appellees, *vs.* CHARLES S. ADDICKS, Appellant.

*Opinion filed December 16, 1914—Rehearing denied Feb. 4, 1915.*

1. WILLS—*express words of limitation are not necessary to create cross-remainders.* It is not necessary that there be express words of limitation in a will in order to create cross-remainders, and they will be implied where necessary to carry out the testator's intention.

2. SAME—*when provision of will creates implied cross-remainders.* A devise of land to the testator's two sons, to share alike the rent and income during their natural lives, subject to the life estate of the testator's widow, and after the death of the two sons the land to be sold and the proceeds divided equally among the testator's grandchildren, there being no express disposition made of the estate of the life tenant who should die first, creates a life estate in each of the sons with an implied cross-remainder to the survivor, determinable upon his death. (*Cheney* v. *Teese,* 108 Ill. 473, and *Fussey* v. *White,* 113 id. 637, distinguished.)

APPEAL from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

HAND & MELIN, for appellant.

HENRY WATERMAN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees, as complainants, filed their bill in the circuit court of Henry county to construe the will of B. Gerhard Addicks and for other relief. At the time of his death the testator left surviving him a widow, Anna M. Addicks, and his only children and heirs-at-law, George B. Addicks, Charles S. Addicks, Louise C. Fintel and Anna R. Yager. Since the death of the testator his son George B. Addicks, and his widow, Anna M. Addicks, have died. George B. Addicks died before the death of the widow. By the third paragraph of his will B. Gerhard Addicks gave his widow, Anna M. Addicks, a life estate in a certain described

eighty-acre tract of land, and by the tenth paragraph he disposed of said tract of land subject to the widow's life estate. The decision of this case depends mainly upon the construction to be given said tenth paragraph, which is as follows: "The said north half of the north-east quarter (N. ½ N. E. ¼) of said section twenty-five (25), in township seventeen (17), north of range two (2), east of the fourth principal meridian, in said county of Henry and State of Illinois, the use of which is herein given to my wife during her natural life, I give, devise and bequeath to my two sons, George B. Addicks and Charles S. Addicks, to share alike the rent and income of the said tract of land above described during their natural lives, subject, however, to the life estate of my said wife. After the death of my said sons, George B. Addicks and Charles S. Addicks, said tract of land shall be sold and the proceeds thereof shall be equally divided between all of my grandchildren, share and share alike." During the lifetime of the widow of the testator she collected the rents and profits of the land from the tenant, Butzer, who is in possession. Since her death the children of George B. Addicks claim they are entitled to one-half the rents, and Charles S. Addicks claims he is entitled to all the rents during his life. Complainants in the bill are the children of George B. Addicks, and their contention is that by the tenth paragraph of the will their father and Charles S. Addicks each took a life estate terminable only upon the death of both, and that when George B. Addicks died, his estate, which was to continue until the death of Charles S. Addicks, descended to complainants, his children and that they are now entitled to one-half the income from the land until the death of Charles. This contention was sustained by the circuit court and a decree entered accordingly, from which Charles S. Addicks has prosecuted this appeal.

Appellant does not claim that he succeeded to a life estate in the whole of the premises upon the death of his

brother by right of survivorship, as in the case of joint
tenancy, but that the devise being made to two for their
lives, with a limitation over upon their death, an estate by
implication arises in the survivor for his life,—or, other-
wise expressed, each would take a life estate with a cross-
remainder to the survivor, determinable upon his death.
The parties are agreed that George B. and Charles S. Ad-
dicks were tenants in common for their lives, and that it
appears from the will the intention of the testator was that
the land was not to be sold and the proceeds divided among
his grandchildren until after the death of both George and
Charles.   There is very little, if anything, to be found in
any of the other parts of the will to aid in arriving at the
intention of the testator.   As we view it, the devise was
to the two sons for and during their lives, with directions
for its sale after the death of both life tenants and the dis-
tribution of the proceeds among the testator's grandchil-
dren, but there is no express direction of the testator as to
where the interest of the life tenant dying first should go
during the continuance of the survivor's life estate.   The
testator could undoubtedly have provided that the children
of the life tenant dying first should succeed to his interest
if he had wanted them to do so.   They were part of the
class to whom the proceeds were to be distributed when
the land was sold after the termination of the life estates.
No express provision was made for them until the occur-
rence of that event, and there is no language in the will in-
dicating any desire to favor them above the other grand-
children.   In the absence of any guide as to the testator's
intention except the language making the devise in para-
graph 10 of the will, we must resort to legal principles ap-
plicable to such language.

If, as appears to us to be the case, the testator made
no express disposition of the share of the life tenant who
should die first and before the time for final distribution,
each of the sons of the testator took a life estate with cross-

remainders determinable upon the death of both. A definition of cross-remainders, deduced from the authorities by the authors of the chapter on "Remainders, Reversions and Executory Interests," in the American and English Encyclopedia of Law, (vol. 24, p. 415,) is as follows: "Cross-remainders may be defined as remainders limited after particular estates to two or more persons in several parcels of land, or in several undivided shares in the same parcel of land, in such way that on the determination of the particular estates in any of the several parcels or undivided shares they remain over to the other grantees, and the reversioner or ulterior remainder-man is not let in till the determination of all the particular estates." (See, also, 2 Washburn on Real Prop.—3d ed.—516.) It is not necessary that there be express words of limitation in a will to create cross-remainders, but they will be implied where necessary to carry out the testator's intention. This appears to us a proper case for the application of the doctrine of cross-remainders. The only expressed intention of the testator as to the children of George B. Addicks is that they shall share in his estate when the life estate of the two sons is terminated. In Underhill on Wills the author says, in section 470: "If the devise is to A and B for their natural lives and on the death of both to others, and A dies before B, an estate by implication arises in B for his life, for the remainder-men are not to take until the death of both A and B, and the intermediate interests between the ending of the joint lives of A and B and the death of the survivor is not expressly disposed of."

In *Dana* v. *Murray,* 122 N. Y. 604, (26 N. E. Rep. 21,) the testatrix left surviving her a husband, four sons and three unmarried daughters. By her will she devised an estate to her husband and three daughters so long as any two of the daughters remained unmarried and for one year after the marriage of the daughter who should marry

second in the order of time. After the termination of the estate thus created the property was to be sold and the proceeds divided among the children of the testatrix then living and the issue of any who might be dead. One of the daughters married and the husband died before the litigation arose requiring a construction of the portion of the will above referred to in substance and a determination of the rights and interests of the parties in the estate created thereby. Another one of the daughters died while the litigation was pending. It is well to observe that the will made no express disposition of the intermediate interest between the death of one of the devisees and the termination of the estate created by the devise. What the court said in construing the will and determining the character of the estate devised the husband and three daughters is so pertinent to the case before us that we quote at length from the opinion: "The provision is, as we have seen, that the premises shall be held and enjoyed by her husband and the three daughters so long as any two of the daughters shall remain single and unmarried and for the space of one year after the marriage of the daughter who shall be married second in the order of time. On the marriage of one of the daughters her spinsterhood would cease but not the estate, for two daughters would still remain unmarried. If neither of these daughters should marry the estate would still continue during their lives, and inasmuch as this event may never happen it must be regarded as an estate for life, subject to defeat in case of the marriage of the second daughter. (2 Blackstone's Com. 121; *Rosebloom* v. *Van-Vechten,* 5 Denio, 424.) The estate devised to the husband and three daughters is *in solido,* and the statute provides that 'every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be in joint tenancy.' (1 Rev. St. p. 727, sec. 44.) Here we have no express words de-

266 – 23

vising the estate to them as joint tenants or words clearly imputing such intent, and they consequently must be regarded as tenants in common. (*Purdy* v. *Hayt*, 92 N. Y. 446-452; *In re Verplanck*, 91 id. 439-443.) But one sale has been authorized and one division ordered after the termination of the life estate, and the persons entitled to such division can only be ascertained when that event shall take place. The property consists of a house and lot not capable of being partitioned. Her desire, as we have seen, doubtless was to provide a home for her husband and unmarried daughters, and it was manifestly her intention that the survivor or survivors should succeed for life or during the continuance of the estate of those that should die. Each, therefore, took a life estate with cross-remainders as tenants in common, determinable upon the marriage of two of the daughters, so that when the husband, James B. Murray, died, his one-fourth interest vested in the three daughters, and when Caroline died, her life interest vested in the two remaining daughters, and when one of the two remaining daughters shall die the life estate will vest wholly in the survivor. The will has provided for the termination of the estate upon the marriage of two of the daughters, and no express provision has been made for the termination of the estate in case all the life tenants shall die during the spinsterhood of the daughters or two of them, but the estate created was only a life estate, and, of necessity, terminates with the death of all of the life tenants. The power of sale provided for in the will can be exercised in one year after the marriage of the second daughter or after the termination of the life estate, which, upon the failure of two of the daughters to marry, could only occur upon the death of all of the life tenants." *Dow* v. *Doyle*, 103 Mass. 489, and *Loring* v. *Coolidge*, 99 id. 191, both involve the same question and reach the same conclusion reached by the New York court.

"Cross-remainders are another qualification of these expectant estates, and they may be raised expressly by deed and by implication in a devise. If a devise be of one lot of land to A and of another lot to B in fee, and if either dies without issue the survivor to take, and if both die without issue then to C in fee, A and B have cross-remainders over by express terms, and on the failure of either, the other or his issue takes and the remainder to C is postponed; but if the devise had been to A and B of lots to each and remainder over on the death of both of them, the cross-remainders to them would be implied." (4 Kent's Com.—12th ed.—201, 202.) When cross-remainders will be implied is discussed at length in 3 Jarman on Wills, (5th Am. ed. chap. 42.)

In *Lombard* v. *Witbeck*, 173 Ill. 396, the provisions of a will creating a life estate in three persons, with remainder over, were different from the provisions of the will here involved, but the court clearly recognized the doctrine of cross-remainders in the following language used in the opinion: "In 2 Jarman on Wills (R. & T. ed. p. 552,) it is said: 'Sir G. Jessel, M. R., said in *Maden* v. *Taylor*, 45 L. J. Ch. 569, that the true rule was laid down in *Doe* v. *Webb*, that you must ascertain whether the testator intended the whole estate to go over together. If you once found that to be intended you were not to let a fraction of it descend to the heir-at-law in the meantime. You were to assume that what was to go over together, being the entire estate, was to remain subject to the prior limitations until the period when it was to go over arrived. He thought that principle applied to a case like that before him, where it was plain in one event the whole estate was to go over together although it was possible that another event might happen in which that intention might be disappointed. He therefore held that cross-remainders must be implied between the children of each niece, otherwise,

while the particular event was still in suspense, a fraction might, by the death of one child without issue, descend to the heir-at-law.' To the same effect is *Doe* v. *Birkhead,* 4 Exch. 110; *Douglas* v. *Andrews,* 14 Beav. 347; *Dutton* v. *Crowdy,* 33 id. 347; *In re Jarman's Trusts,* L. R. 1 Eq. 71."

Appellees rely upon *Cheney* v. *Teese,* 108 Ill. 473, and *Fussey* v. *White,* 113 id. 637, as laying down the rule in this State against the application of the doctrine of cross-remainders. *Fussey* v. *White, supra,* is clearly distinguishable from this case and not in conflict with the views we have expressed. In the *Cheney case* the will gave the two daughters of the testator a life estate in certain land with full right to possess and occupy it "during their natural lives," with remainder in fee to his grandchildren born of the bodies of the said two daughters. One of the daughters, Mrs. Cheney, died leaving a husband and two children surviving her. Mrs. Teese, the surviving sister, claimed the use of the whole of the land, as survivor, during her life. She based her claim upon the right of survivorship, but the claim was disallowed on the ground that the right of survivorship existed only in case of joint tenancy, and under our statutes joint tenancy was abolished except in cases where the grant, devise or conveyance expressly declared the premises should pass, not in tenancy in common but in joint tenancy, and in every case where not so expressly declared the estate should be deemed to be a tenancy in common. It was held the life estate devised the daughters was a tenancy in common and the right of survivorship did not obtain, which was clearly right. In that case, as in the case at bar, no express disposition was made of the intermediate interest between the ending of the joint lives of the sisters and the death of the survivor, but the question of an estate by implication or cross-remainders arising in favor of the survivor until her death was not raised or

passed upon. If that claim had been made the case would have been a proper one for the application of implied cross-remainders, but as that question was not raised and the case was disposed of upon other grounds it cannot be said the decision is an authority against the doctrine of implied cross-remainders. This, we think, must be so, for in *Lombard* v. *Witbeck, supra,* decided fourteen years later, the doctrine of cross-remainders was recognized. It is never allowable to apply the doctrine of cross-remainders to defeat the testator's intention, but such remainders are favored by the law to carry out his intentions. In our opinion the construction we have given the will of B. Gerhard Addicks gives effect to his intention.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*