(No. 27070.—Affirmed in part, reversed in part and remanded.)
MABEL MARTIN *et al.*, Appellees, *vs.* LEETA L. CASNER, JR.,
*et al.*—(LEETA L. CASNER, JR., Appellant.)

*Opinion filed May 20, 1943.*

FRANCIS R. WILEY, for appellant.

EVANS & KUHLE, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This appeal is prosecuted to reverse a decree of the circuit court of Macon county entered in a suit instituted to partition lands, a part of which was owned by Anna

L. Winings who died intestate, and a part of which was owned by her husband, who died testate. Anna L. Winings died October 7, 1938, and James D. Winings died May 20, 1939. Their five children, namely: Ira H. Winings, Lottie Brohart, Sarah Ping, Myrtle Casner and James W. Winings, survived them. Myrtle Casner had five children and the others one each. All of the grandchildren were alive when James D. Winings executed his will and when he died.

The son Ira died February 9, 1941, intestate, leaving Nora Maude Winings, his widow, and an only child, Mabel Martin. Nora Maude Winings elected to waive dower and take her interest in her husband's real estate in fee.

Mabel Martin and Nora Maude Winings started this suit against the surviving children of James D. and Anna L. Winings, and the other eight grandchildren, to partition the real estate of which Anna L. Winings died seized and which, upon her death, passed to her five children, subject to the dower and homestead rights of her husband. Also included in the complaint for partition was the real estate of which James D. Winings died seized and which was devised by his will. The principal question on this appeal is as to the meaning of the second item of the will, which is as follows:

"SECOND: I do hereby give, bequeath, and grant and devise unto my five children, Ira H. Winings, Lottie Brohart, Sarah Ping, Myrtle Casner and James W. Winings, a life estate for and during the term of their natural lives in all of my real estate that I may die seized of, giving unto each the equal undivided one-fifth part, share and share alike. It is, however, hereby expressly provided that the personal property and my residence in the City of Decatur may be sold by my Executors, and the proceeds thereof, after the payment of all just claims against my estate, shall be equally divided among my five children, giving unto each, the absolute one-fifth part thereof, share and share alike.

At the death of either or all of my said children, the share by this my Will hereby devised to such decedent is hereby given to the child or children of the body of such decedent and in case no child or children survive, then and in such case, such share of either of

my deceased children is hereby given and devised to the survivors of my above named children in equal part, share and share alike.

And at the death of all of my above named children, all of the remainder in fee of all of my real estate is hereby granted and devised unto the children of the body of my said children surviving per capita and not per stirpes, giving unto each grandchild an. equal part, share and share alike."

Anna L. Winings died seized of property in Decatur, where she and her husband resided, and an undivided one-half interest in a vacant lot, the other one half of which was owned by James D. Winings. At the time of his death, James D. Winings owned a one-half interest in the vacant lot above mentioned and about 240 acres of farm land. He died within the year after the death of his wife without having elected to waive dower in her lands and therefore his rights in her property were limited to dower and homestead, both of which terminated at his death. *Braidwood* v. *Charles,* 327 Ill. 500.

The theory upon which plaintiffs sought partition was that (a) Ira H. Winings had died seized of an undivided one-fifth interest in the real estate owned by his mother, to which interest plaintiffs have succeeded as his widow and sole heir-at-law and, (b) that by the will of James D. Winings, Ira H. Winings and the other four children named were devised a life estate and that upon the death of Ira H. Winings the one-fifth part which had been encumbered with his life estate vested under the will in Mabel Martin. The circuit court adopted plaintiffs' theory of ownership of the several tracts and ordered partition as prayed.

This appeal was perfected by Leeta L. Casner, Jr., one of the sons of Myrtle Casner, and as grounds for reversal he urges (a) as to the property of Anna L. Winings, that the provision in the will of James D. Winings that, "It is, however, hereby expressly provided that the personal property and my residence in the City of Decatur may be sold by my Executors, and the proceeds thereof, after the pay-

ment of all just claims against my estate, shall be equally divided among my five children, giving unto each, the absolute one-fifth part thereof, share and share alike" shows testator intended to devise a fee-simple title to the residence property, a title which he did not own. It will be noted that on the date of the execution of the will, November 4, 1938, the title of the residence property was vested in fee simple in the children of Anna L. Winings, subject only to the dower and homestead rights of 'her husband. It is claimed that such attempted devise forces plaintiff Martin and the surviving children of Anna L. Winings to an election to take either as heirs-at-law of Anna L. Winings, thereby renouncing all benefits under the will of James D. Winings, or forego their interest in the residence property as heirs of Anna L. Winings, so that they may accept the benefits of the will. (b) As to the farm land and the undivided one-half of the vacant lot owned by the testator, it is contended that the will created a life estate extending from the date of the death of testator until the death of the last surviving child and that upon the death of Ira H. Winings his daughter, Mabel Martin, became entitled to share in the estate as a life tenant taking the one-fifth interest her father had received during his life, and that such estate would continue in her until the death of the survivor of the children of testator and upon the death of such survivor she would, if then living, become seized of a fee-simple title in the remainder with the other grandchildren then living, computed on a *per capita* and not a *per stirpes* basis. It is also urged that if any of the children of testator dies without issue of his or her body surviving, the surviving children of testator take a cross remainder in the life estate of such deceased child, the same to continue until the death of the survivor.

The first question for consideration is as to appellant's claim that Mabel Martin's interest in the property of Anna

L. Winings is affected by the obligation to elect that rested upon the heirs of such decedent. The doctrine of election as between inconsistent rights has been long established. (*Wilbanks* v. *Wilbanks*, 18 Ill. 17; *Brown* v. *Pitney*, 39 Ill. 468; *VanSchaack* v. *Leonard*, 164 Ill. 602.) It has had frequent application involving interests of legatees and devisees in wills. It is founded upon the equitable principle that he who would accept the bounty of another must do so upon such terms and conditions as the donor may choose to impose. (*Palenske* v. *Palenske*, 281 Ill. 574.) If a testator devises property owned by him to one beneficiary and then assumes to devise property which such beneficiary owned to another, the devisee whose property has been devised by the testator will be required to elect whether he will take the benefits of the will or claim his rights as they existed in his own property. He can not take the benefits under the will and at the same time renounce the provision by claiming his own property. (*Palenske* v. *Palenske*, 281 Ill. 574; *Pace* v. *Pace*, 271 Ill. 114; *Fry* v. *Morrison*, 159 Ill. 244.) Such equitable principle has implicit in it the elements of inconsistency which must be accompanied by resulting reduction of the gift of the donor to another. The effect of the provision of the will was that testator assumed to devise to his five children property they already owned. The will gave it to them in the same proportions and the same estate which they had received by descent from their mother. There is no inconsistency which forces an election. Neither is there anyone injured by such a devise.

In *Carper* v. *Crowl*, 149 Ill. 465, after reviewing a number of cases involving the principle of election, it was said: "It would therefore seem indispensable to the application of the doctrine of election, that there be, first, a plurality of gifts, or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the other;

and second, in case the property of the devisee is disposed of by the will, and he chooses to assert his right to such property against the will, that there be a fund for his benefit, given by the will, which can be laid hold of to compensate the parties whose right to take under the will is defeated by the election."

Attention is directed to the provision in the will which states that "the residence property may be sold by my executors and the proceeds divided," etc., as creating an interest in the residence property different from that which the children held as heirs of their mother. The reference to a sale by the executors did not change the interest, for there was nothing in the direction to sell and divide among the children that made it imperative that the executors sell. A conversion to personalty was not necessary to the vesting of the interests.

In *Vierieg* v. *Krehmke,* 293 Ill. 265, it was said: "The point most earnestly urged is that the terms of the will effected a conversion of the real estate into money, and that appellant [executor] had the sole right to convert said property into cash and to distribute the proceeds in accordance with the terms of the will. The authorities are uniform in holding that to establish a conversion the direction to convert must be positive and explicit and the will must decisively fix on the land or the money the character intended to be given it  *  *  *.  Where only a power of sale is given without explicit and imperative direction for its exercise, and the intention of the testator in the disposition of his estate can be carried out although no conversion is adjudged, the land will pass as such and will not be changed into personalty."

In the interpretation of wills, the intention of the testator must control. The whole will and all its parts must be considered in order to ascertain that intention. (*Carlin* v. *Helm,* 331 Ill. 213; *McCormick* v. *Sanford,* 318 Ill.

544.) The intent which controls is that which is manifest, either expressly or by necessary implication, from the language of the will. (*Rock Island Bank and Trust Co.* v. *Rhoads,* 353 Ill. 131; *Zierau* v. *Zierau,* 347 Ill. 82; *Halderman* v. *Halderman,* 342 Ill. 550.) In determining intent, words employed by the testator must be given their ordinary meaning. Technical words are presumed to be used according to their technical meaning and will be given that meaning unless it clearly appears that they were not used in that sense. *Peacock* v. *McCluskey,* 296 Ill. 87.

There is nothing in any of the other paragraphs of the will which aids in interpreting the part set forth. In construing this item it is necessary to determine the extent of the life estate given to the five children. Was it a devise of a life estate to the children of testator, the duration of such estate to extend from the death of the testator to the death of the survivor of the life tenants, or was it, as contended by the plaintiffs, a devise of a life estate the income of which was divided into five parts, the incidents of the estate terminating as to any one-fifth part whenever the life tenant of such share should die, thereby immediately vesting the remainder in possession and use in the children of such deceased life tenant? If construction as to this point rested solely upon the first paragraph of the second item, there could be no question that under the decisions of this court the devise to the children "for and during the term of their natural lives" would be construed to mean that there was a life estate to the five children as tenants in common, such estate terminating as to each share upon the death of the respective holders and the remainder as to each share vesting in possession and use at once. (*Fussey* v. *White,* 113 Ill. 637; *Whittaker* v. *Porter,* 321 Ill. 368.) The foregoing cases hold that unless the will expressly postpones the enjoyment of the remainder until the death of all the life tenants, no such postponement will be found

to exist, and the terms "at their death" or "at their decease," referable to the death of the life tenants, will be construed to mean "as they respectively die."

Is there language in this will which evidences an intent to postpone the enjoyment of the remainder? In the second paragraph of the quoted part the testator provided for two conditions, namely, if a child of his should die leaving a child or children, and second, if a child should die without issue of his body. In either event the will disposed of "the share  *  *  *  devised to such decedent." The share "devised to such decedent," standing alone, would be meaningless, for the share that each deceased child of the testator had received was but a life estate and, as to such child or his estate, all rights in the will terminated upon his death. The third paragraph of the second item which provides that "at the death of all of my above named children all of the remainder in fee  *  *  *  is hereby granted and devised unto the children of the body of my said children surviving" indicates an intent of the testator to postpone the grandchildren's enjoyment of the remainder until the survivor of his children should die. It is the only provision of the will which undertakes to expressly devise the remainder and that disposition is made to take effect at the death of all of the life tenants. The meaning of the provision in the second paragraph "the share devised to such decedent" becomes evident when considered in connection with the third paragraph. The enjoyment of the whole remainder being thus postponed, the second paragraph prevented intestacy as to the one-fifth enjoyed by a life tenant who had died during the pendency of the life estate. The period covered extended from the death of any child of testator to the death of the survivor of them. If one of the life tenants died leaving a child, such child would take, by virtue of the will, the same interest the deceased parent had received, and if any of the life tenants died leaving no child of his

or her body, then the incidents of the life estate held by such deceased child would go to the surviving children of the testator. It created a life estate in the children of a deceased child *per autre vie* (*Geist* v. *Huffendick,* 272 Ill. 99; *Madison* v. *Larmon,* 170 Ill. 65;) and as to the child who died without children of his body it was an express provision for a cross remainder to the other life tenants. *Addicks* v. *Addicks,* 266 Ill. 349.

In the language of the will, we find an expressed intent of the testator to postpone the enjoyment of the whole remainder until the death of the survivor of testator's children. In this regard this will is distinguishable from the one considered in *Whittaker* v. *Porter,* 321 Ill. 368, which is relied upon by plaintiffs. The language of this will brings it within the rule announced in *Cheney* v. *Tesse,* 108 Ill. 473, and *Addicks* v. *Addicks,* 266 Ill. 349. In the *Cheney case* the testator devised certain real estate in fee to his grandchildren "to take possession only after the death of my said daughters * * * which (my two daughters) shall have full use and enjoyment in possession of all of said lands * * * during their natural lives." The two daughters survived the testator and later entered into an agreement which was considered in the case. One of the daughters died and although the court considered the terms of the agreement, the provision of the will was construed where it was said: "It is, however, plain that the testator intended the right of possession in his grandchildren should begin at the same moment that the right granted to his daughters should cease, and the words, 'to take possession *only* after the death of my said daughters,' plainly postpone the enjoyment of the estate by the grandchildren, as his devisees, until after the death of *both* of his daughters—that is, until the death of the survivor of them. The estate, therefore, granted to the daughters was the full use of the lands from the death of the testator until the death of the last survivor of his daughters, and

did not end with the life of Mrs. Cheney." In the *Addicks case,* the testator devised to his two sons, George and Charles, the rent and income of certain land subject to the life estate of the widow. The interest of the two sons was to continue "during their natural lives * * * After the death of my said sons * * * said tract of land shall be sold and the proceeds thereof shall be equally divided between all of my grandchildren, share and share alike." It was held that the devise was to the two sons for and during their lives with directions for its sale after the death of both life tenants and the distribution of the proceeds among the testator's grandchildren. It was said: "there is no express direction of the testator as to where the interest of the life tenant dying first should go during the continuance of the survivor's life estate. The testator could undoubtedly have provided that the children of the life tenant dying first should succeed to his interest if he had wanted them to do so." It will be noted that in the instant case the will disposes of the interest of the life tenants that die first, while such a provision was not contained in the will in the *Addicks case.* This court found, however, that cross remainders were implied and that the survivor took the share of his co-life-tenant but the principle common to both cases is that there was an expressed intention of the testator to postpone the grandchildren's enjoyment of the remainder until all of the children of testator should die. Having construed the will as to the extent of the life estate to the children of testator and the period of postponement of the remainder to the grandchildren, there remains the question as to the character of that estate, that is, as to whether it is a vested or contingent remainder.

The third paragraph devised the remainder in fee "unto the children of the body of my said children surviving, per capita and not per stirpes, giving unto each grandchild an equal part, share and share alike." This was a devise of

the remainder to a class to take effect upon the death of the survivor of the life tenants, which was an event that must happen, but the event that gives any grandchild of testator an interest in the remainder is that he or she shall survive all the life tenants, which is an event that may never happen. · An estate is contingent when a right of enjoyment is to accrue on an event which is dubious and uncertain. The grandchildren who will take the remainder can only be ascertained upon the determination of the life estate when the remainder is to take effect, at which time those that are alive will take *per capita* and not *per stirpes.* The condition upon which that remainder is to take effect may prevent any of the grandchildren coming into possession of it. The conditional element is also present in the designation of which of the grandchildren will survive all the life tenants. (*Brechbeller* v. *Wilson,* 228 Ill. 502; *Temple* v. *Scott,* 143 Ill. 290; . *Haward* v. *Peavey,* 128 Ill. 430.

Plaintiff Mabel Martin's interest under the will in the remainder being contingent, there is nothing to support a partition of the lands which passed under the will of James D. Winings. It has been pointed out that the real estate of which Anna L. Winings died seized descended to her heirs-at-law as intestate property and, plaintiffs having inherited the interest of which Ira H. Winings died seized, they have a right to a partition of the Anna L. Winings property. Insofar as the decree ordered a partition of the lands of which Anna L. Winings died seized, the same is affirmed, but as to the partition of the lands devised by the will of James D. Winings, the decree is reversed. The cause is remanded with directions to proceed in accordance with the views expressed.

*Affirmed in part, reversed in part and remanded with directions.*