(No. 31415.—

Michael Lavin *et al.*, Appellants, *vs.* Fannie Banks *et al.* —(Lipton Lavin, Appellee.)

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

GROSSMAN & GROSSMAN, of Chicago, (LESTER N. GROSS-MAN, and LOUIS N. GROSSMAN, of counsel,) for appellants.

WELLINGTON G. BROWN, of Chicago, for appellee.

Mr. CHIEF JUSTICE SIMPSON delivered the opinion of the court:

Having granted leave to appeal from the Appellate Court, we have before us for consideration its action in reversing a decree of the circuit court of Cook County. The question for decision is: Did the provision in paragraph marked "THIRD" of the will of Louis Lavin, deceased, reading: "I also give and bequeath to my beloved wife, ANNA LAVIN, all monies on deposit in my name in any bank or banking institution" show his intention that his wife was to have the money found immediately after his death in his safe-deposit box in the Continental Illinois Safe Deposit Company? The circuit court held that this money did not pass to the wife or widow by virtue of the above-quoted portion of the will but the Appellate Court took a contrary view.

The record shows that there were two checking accounts standing in the name of the testator in respective banks and there is no question but that the balance in each of those accounts passed to the widow under the above provision. The money in question was in the safe-deposit box standing in the name of the testator alone, with no other person having any right of access thereto.

The testator departed this life September 23, 1945, leaving his widow, Anna Lavin, surviving, together with four sons, Michael, Joseph, Abraham and Lipton, and three daughters, Fannie Banks, Minnie Stone and Martha Taich,

all of legal age. The sons Michael, Joseph and Abraham were named executors of their father's will and trustees of the property covered by a residuary clause. They brought this suit as individuals and as executors and trustees February 16, 1948, for construction of the will to ascertain if the above-quoted words covered the money in the safe-deposit box. The widow departed this life March 17, 1947, without renouncing the benefits of the will.

If the money in the safe-deposit box did not pass to the widow under the above provision of the will, then it passed under the residuary clause to the trustees. Lipton Lavin, the appellee, was given but one dollar by his father's will. If the money in question became the property of his mother, he stands to gain through her. The testator and his deceased wife were parents of the same children and neither had any other child.

Paragraph designated "FIRST" of the will bequeathed the sum of one dollar to the son Lipton, and provided that he should not inherit any other part of the estate. Paragraph "SECOND" bequeathed $500 to a home for the aged; paragraph "THIRD" gave a farm at Benton Harbor, Michigan, with all buildings and improvements and personal property located thereon to the widow, together with the property which passed under the above-quoted provision of the will; paragraph "FOURTH" directed the executors to purchase a family plot of ground in a cemetery and gave directions for burial and for purchase of a monument; paragraph "FIFTH" devised certain real estate to the sons Michael, Joseph and Abraham; paragraph "SIXTH" bequeathed the testator's stock and other interest in the Lavin Roofing Company to the last-mentioned three sons; paragraph "SEVENTH" was a residuary clause which devised and bequeathed unto Michael, Joseph and Abraham, as trustees, all the rest, residue and remainder of the estate and directed how it should be handled and disposed of.

After providing a small sum for two children of Lipton, this paragraph required the trustees to pay their mother $40 per week from income, any surplus of income to be paid semiannually to the children of the testator, except Lipton. This paragraph also provided that the trustees might use part of the principal if need be for the care and support of the mother. The trust was to terminate fifteen years from the date of the testator's death, should the mother then be deceased, otherwise to terminate upon her death. The balance in the trust, upon termination, was to be divided equally between all of the children, except Lipton. Paragraph "EIGHTH" made provision for distribution in case of the death of any one of the said six children. The remainder of the will deals with the powers and duties of the trustees, names the trustees and executors, and provides that they give a joint bond in the sum of $10,000 in each of said capacities.

Testator left fifteen parcels of real estate in Chicago, eleven improved with buildings, the others unimproved, all valued for tax purposes at about $56,570. His personal property consisted of $22,327.99, being the money in question in the safe-deposit box, $6829.97 cash on deposit in the Central National Bank of Chicago, $6218.01 cash on deposit in the Farmers and Merchants National Bank of Benton Harbor; $4996.32 due from the Lavin Roofing Company, and twenty shares of stock in the same company worth about $2991.20, with miscellaneous coins totaling $8, making an aggregate conservative value of approximately $100,000. He also left a tract of ground referred to as a small farm at Benton Harbor, Michigan, the one devised to his widow, the value of which is not disclosed by the record.

The evidence shows that the Safe Deposit Company, a separate corporation, was a subsidiary of Continental Illinois National Bank and Trust Company of Chicago, and was wholly owned by it. The Safe Deposit Company

occupied a portion of the bank building, the only entrance to it being through the savings department of the bank; the same guards stood watch over properties of both companies; the directories of the bank listed its various departments and included the Safe Deposit Company as one of those departments, while signs located in the bank building pointed out how access to the safe-deposit vault could be had. Testator had no deposit account in this bank. The savings department of the bank occupied the entire street-level floor of the building, while the commercial department occupied the second floor. The vault and premises occupied by the Safe Deposit Company are located in the first basement of the building just below the savings department.

The position of the parties is clear and simple. The appellants contend that the money in the deposit box did not pass to the widow under the will, and the appellee takes the position that it did so pass. Many rules of construction are urged by the parties, but few of them are helpful in this case.

It is urged by appellee that the law favors that construction of the will which conforms most nearly to the general law of inheritance, and he cites *Dahmer* v. *Wensler,* 350 Ill. 23, on this point. That is a proper rule of construction but it is not applicable here because we are unable to tell from the record the value of the property which the widow takes under the will or the value of what she would have taken had she renounced its benefits, as the farm at Benton Harbor devised to her is not shown to be worth much or little. In order to apply the rule contended for, in arriving at the testator's intention, we should know the approximate reasonable value of his whole estate, because he no doubt considered that in the making of his will.

Appellee cites a number of foreign authorities to the effect that provisions for the benefit of a testator's widow should be construed liberally in her favor and that doubts

in the construction of a will are to be resolved in favor of the widow who accepts the provisions of the will in lieu of her rights under the intestate laws. Neither can these principles be properly applied here because we are unable to determine the value of the property she takes under the will or the value of her interest in the estate, had there been no will or had she renounced its benefits. The testator's purpose and intention would no doubt be influenced by the value of the property bequeathed or devised by his will. We cannot assume, in the absence of evidence of such values, that he was not liberal with his wife through the provisions of the will even though the one in question be construed against appellee's position. We could more readily assume that such provisions were liberal because the wife did not renounce the benefits of the will, although she survived the testator by approximately eighteen months.

Appellee argues in effect that because the business of the Safe Deposit Company was carried on in the building of a bank and was known as one of the departments of the bank, all money contained in the safe-deposit boxes was "on deposit" in that bank. He further contends that because the testator had knowledge of conditions and objects surrounding the safe-deposit vault he must have considered the deposit vault as a bank or banking institution, and therefore intended by his will to give the money contained in his box to his wife. The cardinal rule of testamentary construction is to ascertain the intention of the testator and to give it effect. That intention must be gathered from the words of the will itself, as the purpose of construction is to arrive at the intention as expressed by the language of the will and not an intention which existed in the mind of the testator apart from such language. *Dahmer* v. *Wensler,* 350 Ill. 23; *McCormick* v. *Hall,* 337 Ill. 232; *Bond* v. *Moore,* 236 Ill. 576.

In determining the intention of the testator, words employed by him must be given their ordinary meaning

unless it readily appears from the will that they were used in a different sense. *Stagg* v. *Phenix*, 401 Ill. 134; *Martin* v. *Casner*, 383 Ill. 260.

The Appellate Court held that because the physical conditions and surroundings of the Continental Illinois National Bank and Trust Company as connected with the Safe Deposit Company, and because the Illinois law did not require a special license from the bank to conduct a safe-deposit business, the latter was an integral part of the banking business of which the testator had knowledge, and that he therefore intended by the use of the words "in any bank or banking institution" to include the Safe Deposit Company.

The Appellate Court does not discuss, and apparently did not sufficiently consider, what the testator meant by the words "on deposit" as used in the provision of his will in question. The words "on deposit" in any bank or banking institution have a significant meaning, one that seems to be well understood by the average person. Appellee cites dictionary definitions to the effect that a "deposit" is that which is placed anywhere for safekeeping. It is true that one may deposit his money in the ground for safekeeping, or may deposit his jewels in a receptacle at his home for safety or he may deposit important papers in his office safe. We do not believe the testator used the words "on deposit" in that sense.

When one speaks of money being "on deposit" in a bank or banking institution in his name, he conveys the impression that it has been turned over to the custody and control of the bank and that he has some receipt or evidence of having made the deposit. One expects to gain something by having money so on deposit—he either expects to receive interest on the principal, or to have the privilege of checking against the balance. Money in a safe-deposit box of a bank is not known by the bank to be there and cannot be carried by it as being "on deposit."

Money in a deposit box may or may not belong to the owner of the box, even though the box be in his sole and individual name and right. In reality when one places money in a safe-deposit box he does not deposit it in or with the bank. He deposits it in a receptacle controlled by himself. He, alone, has the right to enter that receptacle; his money is still within his control; the bank has no control over the contents but has only a key which aids in entrance. He deposits money in a box in the bank building, but the money is not "on deposit" in the bank.

The case of *People ex rel. Russell* v. *Farmers State and Savings Bank,* 338 Ill. 134, while not in point, uses the following pertinent language: "As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes the creditor of the bank. Such deposit then constitutes a part of the assets of the bank, and in case of insolvency of the bank that deposit belongs to the creditors of the bank in proportion to the amount of their respective claims."

The intention of the testator when clearly expressed must be given effect in preference to any surmise that he did not mean what he said or intended what he said to mean something else. *Gridley* v. *Gridley,* 399 Ill. 215; *Bartlett* v. *Mutual Benefit Life Ins. Co.* 358 Ill. 452; *Heitzig* v. *Goetten,* 347 Ill. 619.

When we consider the entire will of this testator and the facts and circumstances surrounding him at the time it was made, we can find nothing to indicate an intention to use the words in question ·as meaning anything other than what they are commonly understood to mean. We therefore conclude that the intention of the testator in giving his wife "all monies on deposit in my name in any bank or banking institution" was not that she should have

the money in his safe-deposit box in the Continental Illinois Safe Deposit Company. It follows that the judgment of the Appellate Court must be reversed and the decree of the circuit court affirmed.

*Appellate Court reversed; circuit court affirmed.*