(No. 31672.—

KATHERYN E. DYSLIN, Exrx., *et al.*, Appellees, *vs.* JOHN E. WOLF, Trustee, *et al.*—(RALPH DYSLIN, Appellant.)

*Opinion filed November 27, 1950.*

Franklin J. Stransky, of Chicago, for appellant.

Laughlin & Laughlin, of Freeport, (Everett E. Laughlin, of counsel,) for appellees Kathryn E. Dyslin, Exrx., *et al.,* and Eckert, Eckert, Schmelzle & Schnebly, of Freeport, (Robert P. Eckert, Jr., and Robert J. Schmelzle, of counsel,) for appellee Marilee Mae Dyslin.

Mr. Justice Thompson delivered the opinion of the court:

This is a suit in chancery to construe the eighth clause of the last will and testament of Amos Wolf, deceased. The complaint was filed in the circuit court of Carroll County by Kathryn E. Dyslin, as executrix of the last will and testament of Charles Dyslin, deceased. She also proceeded as next friend of Ireta, Charles W., and Janice Dyslin, minor children of Charles Dyslin. All of the living lineal descendants of Amos Wolf were made parties to the suit.

The cause was heard by the court on the complaint as amended, the answers thereto, counterclaims and replies of defendants and plaintiffs, and upon the proof and testimony taken in open court, after which the court found that the eighth clause of the will of Amos Wolf, deceased, created at the time of the death of the said Amos Wolf, a vested remainder in his said grandchildren who were living at

the time of his death, to open, however, to admit all grandchildren subsequently born, and that said grandchildren took said vested remainder as a class *per capita* and not *per stirpes;* that the remainder of Charles Dyslin, deceased, passed by virtue of the provisions of his last will and testament to his widow, Katheryn E. Dyslin, in her individual right. There was a further construction of the will as to the language of the eighth clause, with reference to the trust and distribution of the profits to be made from time to time. The cause is here on appeal, a freehold being involved. A technical motion to dismiss the appeal taken with the case is denied.

The pleadings disclose that Amos Wolf died testate January 18, 1912, leaving him surviving five children, John E. Wolf, Franklin G. Wolf, Ada Dyslin, Ora M. Strickler, and Carrie Erisman. Also surviving the testator were three grandchildren, John Erisman, a son of Carrie, and Charles and Ralph Dyslin, sons of Ada. Thereafter, other grandchildren were born, Ruth Mosher, a daughter of John E. Wolf, George Wolf, son of John E., and David Wolf, son of Franklin G. Wolf.

Ada Dyslin, daughter of testator, died in 1926, leaving her surviving the appellant, Ralph Dyslin, and another son, Charles Dyslin. Franklin G. Wolf also died after testator's death, leaving him surviving a son, David Wolf. The testator's other three children are still living. On May 23, 1947, Charles Dyslin, one of the surviving sons of Ada Dyslin, died leaving a widow, Kathryn E. Dyslin, and three minor children, Ireta, Charles W. and Janice Dyslin, surviving. Charles Dyslin also left a will by which he devised all of his property to his wife, Kathryn E. Dyslin, and appointed her to be the executrix of the said will. At the time of the filing of the complaint a guardian *ad litem* was appointed for minor defendants, and a trustee was appointed for unborn lineal descendants of Amos Wolf.

Both filed their answers committing the interest of their wards to the protection of the court.

The eighth clause of the will in question devises certain real estate in trust to testator's son, John'E. Wolf, as trustee, to be leased by him or his successor, "in such manner and on such terms as said trustee, or his successor, shall deem for the best interests of the beneficiaries of said trust, for and during the lifetime of all my children, including said trustee, and until the death of the survivor of them; * * *." It is then provided that the premises shall be kept in a good state of repair and preservation and that, after deducting the costs of operating the trust, the net income shall be paid to the testator's children annually, in equal shares. This language then follows: "If any of my children shall have died before my death, or shall die after my death, leaving a child or children surviving, then it is my will that said trustee, or his successor, pay the said child or children, equally among them, the share the parent would have taken if living. Upon the death of the survivor of my children, it is my will that the said trust shall terminate and the said real estate go to my grandchildren, in equal shares, absolutely and forever." It is this last-quoted language on which the controversy here rests.

The errors assigned by appellant, Ralph Dyslin, are: (1) That the court below should have held that, upon the death of Charles Dyslin, the entire share of the trust income which Ada Dyslin would have received had she lived, became vested in Ralph Dyslin, as the surviving child of Ada Dyslin, deceased; (2) the court erred in holding that upon the death of Amos Wolf, deceased, the testator herein, a vested remainder in the real estate of the trust vested in those of his grandchildren living at his death and as a class, subject to be opened to admit after-born grandchildren, and that the share of Charles Dyslin, deceased,

passed by his will to Kathryn E. Dyslin, his devisee; (3) the court erred in holding that the livestock, grain, machinery and other personalty remaining in the hands of the trustee at the termination of the trust, became vested in Amos Wolf's grandchildren living at his death, as a class, subject to open to admit after-born grandchildren.

There are two crucial questions presented: (1) Does the language of the eighth article of the will in question give the trust income only to the children and grandchildren of the testator, or was the gift to the lineal descendants of the testator *per stirpes?* (2) Does the will give a vested remainder in the real estate of the trust to the testator's grandchildren living at his death, as a class, subject to open to admit after-born grandchildren?

The first question for determination is as to the income of the trust and pertains primarily in the instant case to the rights therein arising upon the death of Charles Dyslin, deceased, upon his death after surviving his mother, Ada, who was a child of testator. The language of the will which must control this question is as follows: "If any of my children shall have died before my death, or shall die after my death, leaving a child or children surviving, then it is my will that said trustee, or his successor, pay the said child or children, equally among them, the share the parent would have taken if living." This language is so clear in regard to the testator's children and grandchildren that it seems impossible that any difference of opinion could arise as to its meaning. The gift of the income is plainly to the testator's children for the period of their lives, with provisions that upon their death before the trust terminates, their shares in the income are to be divided equally *per capita,* among their children who survive them. There can be no doubt that the gift to grandchildren of the testator, so far as trust income is concerned, is made contingent upon their surviving their parents. Therefore it could not be said that any grandchild who dies before his parents

takes any interest in the trust income, and descendants of such predeceasing grandchildren are likewise excluded from the gift.

The decree below holds, in substance, that as to the income of the trust, the gift was to the lineal descendants of the testator's children generally. It seems obvious that this holding enlarges the gift to include descendants who are expressly excluded by the testator's express words. It is quite possible that a child of one of the testator's children might predecease its parent, leaving children who are "lineal descendants," but whose rights to participate in the income of the trust never matured in their parent. The express and plain contingency in the gift of the trust income, as it applies to the grandchildren of testator, is that they must have survived their parents. Such a gift leaves no room for a finding that the gift of income was to the descendants of testator's children generally. The decree below is erroneous in this regard. However, the factual situation here presents no such question.

The question, so far as the trust income is concerned, is whether the gift of trust income, which vested in Charles Dyslin, upon his survival of his mother, Ada, is such an interest as descends to his children or passes to his devisee. It is to be noted that the contingency of the gift to Charles Dyslin, deceased, was fully satisfied upon the death of Ada, his mother, and that there is nothing in the will which expresses any intention of the testator in regard to the disposition to be made of that part of the trust income which was paid to Charles Dyslin in his lifetime.

Appellant contends that the gift for which Charles Dyslin qualified by his survival of Ada, his mother, is governed by the holding of this court to the effect that the words "child or children" cannot be enlarged to include grandchildren. It is, of course, true that the rule in the abstract is that in construing wills the meaning of "child and children" is never extended to include grandchildren,

unless there is some expression in the will showing that such extension of meaning was intended by the testator. (*Watterson v. Thompson,* 404 Ill. 515.) While there is no quarrel over the rule in its abstract form, it appears there is no basis for its application in this case.

Appellant cites the cases of *Watterson v. Thompson,* 404 Ill. 515, *Bushman v. Fraser,* 322 Ill. 579, *Greenfield v. Lauritson,* 306 Ill. 279, *Hanes v. Central Illinois Utilities Co.* 262 Ill. 86, *Martin v. Modern Woodmen,* 253 Ill. 400, and *Arnold v. Alden,* 173 Ill. 229. In each case cited we held that the meaning of "child" could not be held to include grandchildren, but also, in each case, the language was directed to the situation existing at the death of the first taker. Here, Charles Dyslin survived his mother, Ada, and came into enjoyment of the gift in strict accordance with the express terms of the will. We are of the opinion the cases cited have no proper application here.

The precise question here is what becomes of the income after the entire expressed plan of the testator has been fully complied with and the last taker dies before the trust terminates. The appellant urges that where a share of the income of a trust is given to two or more beneficiaries, and no provision is made in the will as to what shall be done with the part which one of the beneficiaries is to take in case of that beneficiary's death before the termination of the trust, the survivor takes the entire share under the doctrine of implied cross remainder. While this contention may be based on a well-settled principle, the appellant falls into fallacy again because the doctrine of cross remainder has no application to the situation presented on this appeal.

Appellant relies on the cases of *Martin v. Casner,* 383 Ill. 260, *Whittaker v. Porter,* 321 Ill. 368, *Kramer v. Sangamon Loan and Trust Co.* 293 Ill. 553, and *Addicks v. Addicks,* 266 Ill. 349. An examination of these cases reveals the rule to be that where the gift is to two or

more beneficiaries for life, with remainder in another postponed until the termination of the preceding estate, then upon the death of one of the first takers there is nowhere for that beneficiary's share to go under the terms of the gift, and a cross remainder is implied in favor of the survivors among the first takers.

In the instant case, Ada was the first taker of her share in the trust income, and her children, Ralph and Charles Dyslin were remaindermen, and they took in strict accordance with the terms of the will and, upon their taking, the language of the testator was exhausted. Ralph Dyslin and his now deceased brother, Charles, being ultimate takers, the doctrine of cross remainder in our opinion does not apply here.

The situation with respect to Charles Dyslin's share in the income then presents the question as to what becomes of that share upon his death. A case presenting a highly analogous factual situation to the one here is *Routt* v. *Newman*, 253 Ill. 185. There the testatrix, by her will, devised her estate in trust for the life of the survivor of her four sons, with directions that the income of the trust be paid to the sons equally. It was further provided that if any of the sons should die leaving a child or children surviving during the term of the trust, the deceased son's share of the income should be paid to his surviving child or children. The will also provided that the payments of the shares to the beneficiaries of the trust should be "paid to him, her or them in cash and in person into their hands." One of the sons died during the term of the trust, leaving a minor child who also died afterward within the trust period. The child's mother claimed the share of the income the child had received, as the child's next of kin. This court held that because of the requirement that the income be paid to the beneficiaries personally and in cash, the share of the deceased child could not pass to his estate and therefore the share became intestate property of the testatrix.

The import of that holding is that if the gift had been unqualified it would have gone to the child's estate. As was said in *Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447, "The rule is that where, by the terms of the will, the income is to be paid to two or more beneficiaries for life, and it is provided that on the death of the survivor the trust shall terminate and the principal shall be distributed to designated persons, but there is no provision as to the disposition of the income payable to a life beneficiary in the event of his death prior to the time fixed for the termination of the trust, the disposition of such income depends upon the intention of the testator, expressed in his will."

An examination of the will before us reveals that the testator in each devise and bequest to his children expressed his intention that his property should be divided equally between the members of his family. He fixed the value of the various pieces of real estate devised to his children "for the purpose of equalizing my estate among my children." Except for the contingency of his children leaving children surviving, there is no indication that the testator intended that there should be any gathering up of the estate into the survivors among his descendants as the various devisees and legatees died. In clause 13, he stated, "It is my will and desire that all my children shall share equally in my estate, * * *."

It is always presumed that a testator intended to dispose of all of his property, and the presumption against intestacy is so strong that, unless a contrary intent is clearly expressed, it will be presumed that the testator intended to dispose of all of his estate by his will. (*Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447.) The testator's intention is to be gathered, not from one clause of the will, alone, but from the will as a whole and all of its parts, bearing in mind the plan of the testator as expressed in the entire will. *Jackman* v. *Kasper,* 393 Ill. 496.

The gifts to the grandchildren of the testator here are in each case unqualified and absolute, and there is no provision indicating that one should be favored over another, or that there should be any rights of survivorship between them. The plan of the will as a whole is clearly to distribute the testator's bounty generally, among the descendants of the testator, with the single contingency that his grandchildren must survive their parents. That plan supports the presumption that the testator intended to avoid intestacy and leads to the conclusion that the beneficiaries of the income of the trust were the descendants of the testator, and not only his grandchildren, provided the express contingency was satisfied. Charles Dyslin, deceased, fully satisfied the contingency of his surviving his parent and therefore qualified for the gift of a trust income. There being no limitation on the gift as he received it, it was vested in him at the time of his mother's death and at his death descended to his children, who are his and testator's lineal descendants. This conclusion applies, of course, to that part of the trust income for the year 1947, which represents the share which Charles Dyslin, deceased, would have received for the portion of that year remaining after his death on May 23, 1947.

The other crucial question is as to the *corpus* of the trust. The words of the gift in that regard are: "Upon the death of the survivor of my children, it is my will that the said trust shall terminate and the said real estate go to my grandchildren, in equal shares, absolutely and forever." Appellant contends that the gift thus expressed was of a contingent remainder which will vest at the termination of the trust in those of testator's grandchildren living at that time. At the outset, it is clear that there is no language in the gift which in any way qualifies the absolute language of the gift unless it be the words "upon the death of the survivor of my children * * *," coupled with the direction that at that time the real estate entrusted

shall, "go to my grand children." We have held that words such as "at death," "after death" or "upon death" in a devise of a remainder refer not to the time when the remainder is to vest in interest, but to the time when it is to fall into possession of the remaindermen. (*Barker* v. *Walker*, 403 Ill. 302; *Crowley* v. *Engelke*, 394 Ill. 264.) And whenever the person who is to succeed to the estate in remainder is in being and is ascertained, and the event which by express limitation will terminate the preceding estate is certain to happen, the remainder is vested. *Barker* v. *Walker*, 403 Ill. 302; *Hoblit* v. *Howser*, 338 Ill. 328.

In the instant case, the devise of the real estate is to a trustee for the life of the last survivor of testator's children. There are no words in the will which express any intention of the testator that the remainder devised to his grandchildren should be postponed, or that the gift is made contingent upon their survival of the term of the trust. Appellant strenuously urges that the word "grandchildren," as used in the sentence devising the remainder, is to be read as synonymous with the words "child or children surviving," which appear in connection with the gift of trust income. We find no basis for such a contention. The sentence containing the latter words does not refer to the real estate of the trust, but to the trust income. Furthermore, the word "surviving" refers not to the date of the termination of the trust, but to the time of the death of parents of the testator's grandchildren. Charles Dyslin satisfied that contingency when he survived his mother. This contention cannot be sustained.

The important question was whether the factual situation existing at the time of testator's death was one upon which the words of the devise of the real estate could operate. The record discloses that at testator's death there were in being three grandchildren, Ralph and Charles Dyslin and John Erisman. Afterward, there were born three other grandchildren of the testator. Undoubtedly the three

grandchildren living at testator's death qualified as members of the class to whom the remainder in the real estate was devised. It has repeatedly been held that the law favors the vesting of an interest unless a different intention is manifested by the testator. (*Storkan* v. *Ziska,* 406 Ill. 259.) In *Whittaker* v. *Porter,* 321 Ill. 368, we held the devise to the grandchildren was vested at testator's death in those living as a class, subject to be opened to admit other children of the life tenant born afterwards. In *Deem* v. *Miller,* 303 Ill. 240, it was held that where a will creates a life estate, with remainder to the children of the life tenant, the remainder is vested in quality, but subject to be open to admit after-born children. We have held that, in the absence of a clear intention to the contrary, a remainder devised to a class vests in those members of the class in being at the testator's death where the postponement of the distribution is for no apparent purpose except to let in the life estate. *Fay* v. *Fay,* 336 Ill. 299.

Appellant argues that the trust was created, not for the benefit of the testator's children, but for the purpose of postponing the gift to the grandchildren because of their tender age. The language of the will affords no such intention, expressed or necessarily implied. In other clauses of the will devises of real estate are made to testator's children, with provisions that upon their death their children should take, regardless of their age. The cases of *Martin* v. *Casner,* 383 Ill. 260, *Farmer* v. *Reed,* 335 Ill. 156, *Drury* v. *Drury,* 271 Ill. 336, and *Brewick* v. *Anderson,* 267 Ill. 169, cited by appellant, all concern devises in which there were expressed words of postponement in the vesting of the gift. There are no such words of postponement here.

There were members of the class, to which the remainder in the instant case was devised, in being at testator's death, and the remainder vested in them as a class, subject to being open to admit others born afterward.

Charles Dyslin, deceased, as a member of that class, died vested with a share of the remainder, and the gift to him being absolute, his interest in the trust real estate passed to his devisee, Kathryn E. Dyslin. *Harvard College* v. *Balch,* 171 Ill. 275.

Appellee Marilee Mae Dyslin urges that the gift of the remainder to the grandchildren of testator was a gift *per stirpes* and not *per capita.* We find the language of testator clear in this regard. The gift is to "grandchildren in equal shares, absolutely and forever." The testator could not have given a clearer expression of his intention, that each grandchild should take the same interest as all the others, regardless of parentage. The gift was given *per capita.*

The final controversy pertains to the disposition to be made of such personal property as will remain in the trustee's hands at the termination of the trust. The record discloses that such personalty is being, and will be, acquired from the operation of the trust and represents nothing more than the accumulation of the trust income through its operation. No authority is cited and we have found no cases which justify the inclusion of such accumulation in the gift of real estate. The accumulated income under the terms of the will belongs to the beneficiaries of the trust and is subject to the directions in the will regarding trust income. The holding below that such accumulated income is a part of the *corpus* of the trust is erroneous.

From a careful analysis of this record, we are of the opinion the decree below should be affirmed as to the holding that the gift of the *corpus* to the testator's grandchildren vested at his death in them as a class *per capita* and not *per stirpes,* the class being subject to open to admit after-born grandchildren, and the share of Charles Dyslin, deceased, passed by will to Kathryn E. Dyslin, as his devisee. The decree in regard to the trust income should be modified to hold that the gift of trust income was to

the testator's children, with remainder to their surviving children and such children's lineal descendants, *per stirpes.*

Under our views as above expressed, the decree is reversed as to the holding that the personalty that will remain in the trustee's hands at the termination of the trust is a part of the trust in which there was created a vested remainder in testator's grandchildren living at his death, as a class, subject to open to admit after-born grandchildren, and we hold that the share of Charles Dyslin, deceased, therein passed, by his will, to Kathryn E. Dyslin. In all other respects the decree is affirmed, but the cause is remanded, with directions to modify the decree to conform with the views hereinabove expressed.

*Affirmed in part and reversed in part,*
*and remanded with directions.*