THE DIME SAVINGS AND TRUST COMPANY *et al.* Appellees, *vs.* JULIA BALLANCE WATSON *et al.* Appellants.

*Opinion filed April 18, 1912—Rehearing denied June 5, 1912.*

1. WILLS—*when trustees take the legal estate in fee.* Trustees under a will take the legal estate in fee, even though it is not expressly so stated in the will, if the powers conferred and duties imposed upon them are such as necessarily require them to hold the legal estate in fee.

2. SAME—*rule against perpetuities stated.* No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest, and the possibility that it may not be fulfilled within that time violates the rule.

3. SAME—*rule where there is a devise to a class at termination of preceding estate.* Where there is a devise to a class after the termination of an intervening particular estate, all persons belonging to the class at the termination of the prior estate are entitled to share in the devise, whether they were in being at the death of the testator or not; and if the preceding estate may not terminate within the limit fixed by the rule against perpetuities, so that the individuals of the class and the interest of each can be ascertained within that time, the devise to the class is obnoxious to the rule against perpetuities and must fail.

4. SAME—*rule against perpetuities is a rule of law and not of construction.* The rule against perpetuities is a rule of law and not one of construction to use in ascertaining the testator's intention, and such intention must be ascertained without reference to the rule.

5. SAME—*gift directly to class of beneficiaries takes effect immediately.* A gift made directly to a class of beneficiaries, though

its enjoyment be postponed to a future time, takes effect immediately in favor, exclusively, of those members of the class living at the testator's death.

6. SAME—*rule where a direction to pay money in the future is the only disposition.* Where the only disposition of property made by a will is a direction to pay money at a fixed time to a class of beneficiaries, only those members of the class in existence at the time of payment are entitled to share in it.

7. SAME—*when devise of income is not limited to beneficiaries living at testator's death.* Where a will provides that nine-tenths of the net income of the testator's estate "shall be divided semi-annually, equally among my living nephews and nieces," and provides for the disposition of the shares of those who may die either before or after the testator and with or without descendants, the class of beneficiaries is not limited to nephews and nieces living at the time of the testator's death, but means nephews and nieces living at the time of each semi-annual division, and embraces nephews or nieces born after the testator's death.

8. SAME—*when a devise to grand-nephews and grand-nieces violates rule against perpetuities.* A direction to trustees to divide the *corpus* of the estate, "twenty-one years after the death of my last surviving nephew or niece," among the grand-nephews and grand-nieces of the testator is in violation of the rule against perpetuities, where the testator, at the time of his death, had a sister and two brothers living, as in such case it is possible that another nephew or niece may be born who may outlive for a period of more than twenty-one years anyone in being at the testator's death.

CARTER, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

A bill was filed in the circuit court of Peoria county by the Dime Savings and Trust Company and Leslie Robison, executors of the will of John Green Ballance and trustees under its provisions, for a construction of the will, and the court decreed that paragraphs 12, 13, 14, 15 and 16 were in violation of the rule against perpetuities and that the residuary property referred to in those paragraphs was intestate. Six of the beneficiaries appealed.

The first eleven clauses of the will direct the payment of the expenses of the testator's last sickness and of his

funeral and make certain specific bequests, and the twelfth directs the setting aside of $1000, the income to be devoted to the care of the graves of the testator's father and mother. There is no controversy in regard to these clauses. The thirteenth clause places all the testator's property in the hands of his executors as trustees, who are given power to pay the debts and legacies and to sell such property as may be necessary for that purpose without any order of court, and are directed to care for and maintain the residue of the estate so that it may, if possible, increase in value, and to distribute the net income, as defined in the will, at the times therein provided. Clauses 14, 15 and 16 are as follows:

"14. After all the legacies and debts of the estate are paid, the income of the remainder of the estate shall be devoted to paying the current debts incurred for maintaining and managing the estate, expenses of litigation of every kind concerning the property, taxes, assessments, insurance, repairs and all of the alterations to buildings or property of any kind. After all these expenses have been paid, the remainder of the income shall be considered net income, to be disposed of as herein provided.

"15. One-tenth of the net income shall be set aside as a fund for making betterments to the estate as my executors shall consider prudent, to increase the value of the estate. Nine-tenths of the net income shall be divided semi-annually, equally among my living nephews and nieces, the children of my brothers and sisters. The share of any nephew or niece who may die, either before or after my death, shall be given to his or her lineal descendants, if he or she have such descendants, and shall be divided equally between them; but in case any nephew or niece shall die leaving no issue or descendant of such issue, then such nephew or niece are not to be considered in making the semi-annual division of the net income, but the portion that would have descended to such nephew or niece shall be considered to

have lapsed and shall go to the surviving nephews and nieces.

"16. Twenty-one years after the death of my last surviving nephew or niece my estate shall be divided among my grand-nephews and grand-nieces who are lineal descendants of my father and mother, in such way that the share of each nephew or niece shall be divided, in equal parts, between the sons and daughters of said nephew or niece; and in case any of the said grand-nephews or grand-nieces shall have died before the division of the estate leaving any direct lineal descendants, then such descendants shall inherit the share of such deceased grand-nephew or grand-niece. In case any grand-nephew or grand-niece dies without leaving any direct lineal descendant, the portion going to such deceased grand-nephew or grand-niece shall be considered to have lapsed, and he or she will not be considered in making final division of my estate."

The testator's estate, as inventoried by the executors, consisted of real estate valued at $228,850, nearly all situated in the city of Peoria, a large part of it being unimproved or unproductive, the gross annual rental value amounting to $10,271, and $143,870 of personal property. His heirs were a sister, two brothers, and nine nephews and nieces, the children of four deceased sisters. Besides these he left eighteen other nephews and nieces, the children of his surviving brothers and sister, the youngest born July 20, 1909. There were also fourteen grand-nephews and grand-nieces, and a child has been born to one of the nieces since the filing of the bill. The testator was a general in the United States army and was never married. His will is dated August 1, 1908, and he died February 10, 1910.

E. E. WATSON, and MONTGOMERY, HART & SMITH, for appellants.

WINSLOW EVANS, for appellee William Brackett.

JAMES M. RICE, and ALBERT M. KALES, for appellee C. Ballance.

W. L. ELLWOOD, guardian *ad litem.*

Mr. JUSTICE DUNN delivered the opinion of the court:

The first question in the case is, do the trusts declared in the will violate the rule against perpetuities? If that question is answered in the affirmative the decree of the circuit court is right. The purposes of the trust and nature of the powers conferred and duties imposed upon the trustees are such that they necessarily take the legal estate in fee, though it is not expressly stated so in the will. (*West* v. *Fitz,* 109 Ill. 425; *McCartney* v. *Osburn,* 118 id. 403.) The design of the testator was that the whole estate should ultimately vest in his grand-nephews and grand-nieces, who would necessarily be the lineal descendants of his father and mother, as stated in clause 16 of the will. But the division of the estate among his grand-nephews and grand-nieces was not to take place until twenty-one years after the death of his last surviving nephew or niece, and until that time arrived it could not be told what individuals would be entitled to participate in the division. Therefore, if that time might possibly not arrive until more than twenty-one years after the death of the testator and the death of all his nephews and nieces who were living at his death, the devise to the grand-nephews and grand-nieces would transgress the rule against perpetuities. The rule is, that no interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest, and the possibility that it may not be fulfilled within the time violates the rule. (*Howe* v. *Hodge,* 152 Ill. 252; *Lawrence* v. *Smith,* 163 id. 149; *Eldred* v. *Meek,* 183 id. 26; *Owsley* v. *Harrison,* 190 id. 235; *Schuknecht* v. *Schultz,* 212 id. 43; *Quinlan* v. *Wickman,* 233 id. 39; *Pitzel* v. *Schneider,* 216 id. 87.) Where there is a devise

to a class after the termination of an intervening particular estate, all persons belonging to the class at the termination of the prior estate, whether in being at the death of the testator or not, are entitled to share in the devise. Where the preceding estate may not terminate within the limit fixed by the rule against perpetuities, so that the individuals of the class and the interest of each can be ascertained within that time, the devise to the class is obnoxious to the rule and must fail. *Schuknecht* v. *Schultz, supra; Pitzel* v. *Schneider, supra.*

The condition precedent to which the interests of the grand-nephews and grand-nieces are subject is the death of the last surviving nephew or niece of the testator and the expiration of twenty-one years thereafter. The testator left two brothers and a sister surviving him. If a child should now be born to one of them, such child would be a nephew or niece of the testator, and such nephew or niece, if outliving the other nephews and nieces, would be the last surviving nephew or niece of the testator. Such nephew or niece might outlive the lives in being at the testator's death more than twenty-one years, and thus the death of the last surviving nephew or niece might not occur within the time required by the rule to make the devise to the grand-nephews and grand-nieces valid. The ultimate gift to the grand-nephews and grand-nieces is therefore void unless the words "last surviving nephew or niece," at the beginning of clause 16, are to be understood in a sense different from their natural and ordinary meaning. If they are to be interpreted as meaning something different from what they naturally indicate, the reason for such interpretation must be found in other language in the will showing that the words were used with a meaning different from their primary sense. No such language is found in clause 16. Counsel for appellants find the qualifying language in the words "my living nephews and nieces," at the beginning of clause 15. Their argument is that the words "my last

surviving nephew or niece" refer back to "my living nephews and nieces," and that these latter words refer to the nephews or nieces living at the testator's death.

No direct gift is made to the nephews and nieces. The rule is that a gift made directly to a class of beneficiaries, though its enjoyment be postponed to a future time, takes effect immediately, in favor, exclusively, of those members of the class in existence at the testator's death. In such case the word "living" is immaterial, for without it the devise is to the members of the class living at the testator's death, and the only occasion for its use arises if it is desired to indicate persons living at some other time. Another rule is, that where the only disposition of property made by a will is contained in a direction to pay money at a future fixed time to a class of beneficiaries, only those members of the class in existence at the time of payment are entitled to share in it. The only disposition of nine-tenths of the net income was the direction to divide it semi-annually equally among the testator's living nephews and nieces. In accordance with the rule of construction just mentioned, this means the nephews and nieces living at the time of each semi-annual division, unless the will contains other language or other provisions showing that these words were not intended to be used according to their usual meaning in this connection.

Counsel for appellants argue that the will speaks from the time of the testator's death, and that "living nephews and nieces" refers to those living at that time. It is true that the will took effect immediately upon the testator's death and the entire legal title to his property then passed to the trustees. The will spoke from that time, and its directions as to future payments by the trustees are subject to the ordinary rules of construction and are governed by the conditions existing at the time such payments are required to be made. There is no language in clause 15 which tends in any way to control the words "living nephews and

nieces" and limit the living nephews and nieces to those living at the testator's death. On the contrary, in both clause 15 and clause 16 there is language indicating that nephews and nieces were in the testator's contemplation who were not living at the testator's death. In clause 15, after directing the division of nine-tenths of the net income among the living nephews and nieces, it is provided that "the share of any nephew or niece who may die, either before or after my death, shall be given to his or her lineal descendants, if he or she have such descendants," etc. It thus appears that all the nephews and nieces of the testator were within his contemplation in this clause, whether living at his death or not, and that he regarded any nephew or niece, whether living at his death or not, and, even though dead in his lifetime, as having, under this clause, a share in the estate, which he directed to be paid to his or her descendants. It is clear that "living," as used in this clause to indicate the nephews and nieces who should share in the division of the net income, refers to and distinguishes the two classes of beneficiaries,—that is, at each division the nephews and nieces then living and the descendants of those who had died, either before or after the testator. The gift was to the then living nephews and nieces and to the descendants of those who were dead. Clause 16 directs the ultimate division of the estate among all the testator's grand-nephews and grand-nieces in such way that "the share of each nephew or niece shall be divided, in equal parts, between the sons and daughters of said nephew or niece." Here, again, the testator recognizes that each nephew or niece is entitled to a share in the estate.

The plan of the testator for the final disposition of his estate was a very simple one. He intended that when the time of final disposition should have arrived his estate should be divided among the descendants of all his nephews and nieces, and that the descendants of each nephew or niece should receive, as together representing their respec-

tive ancestors, a share proportionate to the total number of all his nephews and nieces, and that in the meantime the income, subject to the charges imposed thereon by the will, should be divided equally among all his living nephews and nieces and the descendants of such as might be dead, the latter taking by representation. Each nephew or niece was regarded as a stock of descent,—a channel through which the estate should descend. This is the plain meaning of the language used. It is not a case of ambiguous meaning or doubtful construction. The only difficulty is that this intention violates the rule against perpetuities. If it were not for such violation no one would have any doubt as to the intention. Does the existence of the rule change the intention expressed by the words of the will? Can we wrest the language to another meaning to avoid the rule?

The rule against perpetuities is a rule of law and not of construction. It cannot be used to ascertain the intention. Its special purpose is to defeat the intention if in violation of the rule. The intention, then, must be ascertained without reference to the rule,—as if the rule did not exist. The course to be pursued was stated by Mr. Baron Parke in *Dungannon* v. *Smith*, 12 Cl. & F. 546, on page 599: "We must first ascertain the intention of the testator, or more properly this meaning of his words in the clause under consideration, and then endeavor to give effect to them so far as the rules of law will permit. Our first duty is to construe the will; and this we must do exactly in the same way as if the rule against perpetuity had never been established or was repealed when the will was made, not varying the construction in order to avoid the effect of that rule but interpreting the words of the testator wholly without reference to it." (*Cottman* v. *Grace*, 112 N. Y. 299.) The ultimate disposition of the testator's property is so essential a part of the scheme of his will that it can not be supposed he would have created the trust if he had

understood this part of his will would fail.    *Lawrence* v.
*Smith, supra; Pitzel* v. *Schneider, supra.*

The decree of the circuit court was in accordance with
the views here expressed, and it is affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE CARTER, dissenting:

I do not think this will contravenes the rule against
perpetuities.  Whom did the testator have in mind by the
words "living nephews and nieces," found in the first part
of clause 15 of the will?  Reading the entire will together
and giving the words their natural meaning and construc-
tion, it seems clear to me that he meant by these words the
nephews and nieces living at the time of his death.  It is
usually true that the testator has in mind the objects of his
bounty in existence at the time the will is executed.  When
there is nothing in the instrument indicating that the con-
trary was intended the will speaks from the death of the
testator.  (*Updike* v. *Thompson,* 100 Ill. 406; *McCoury's
Exrs.* v. *Leek,* 14 N. J. Eq. 70.)  The construction given
this will in the opinion of the court seems to me to leave
the word "living," in the phrase "living nephews and
nieces," practically without meaning.

The controlling consideration in construing a will is to
give effect to the intention of a testator if it can be done
without contravening established rules of law.  (*Bradsby* v.
*Wallace,* 202 Ill. 239;  *Mettler* v. *Warner,* 243 id. 600.)
That the testator did not intend to contravene the rule
against perpetuities is clear.  The opinion of the court
rightly states that the rule against perpetuities is not a
rule of construction; that a will is to be construed as if
the rule did not exist and then the rule applied.  (Gray's
Rule Against Perpetuities,—2d ed.—sec. 629.)  There is,
however, a legitimate use of this rule in matters of con-
struction.  "When the expression which a testator uses is

really ambiguous and is fairly capable of two constructions, one of which would produce a legal result and the other a result that would be bad for remoteness, it is a fair presumption that the testator meant to create a legal rather than an illegal interest. * * * Especially is this the case if the testator shows, by other provisions of his will, that when making it he has had the rule against perpetuities in his mind." (Gray's Rule Against Perpetuities,—2d ed.—sec. 633.) The testator was a lawyer and had practiced that profession. The expressions that he used in the will show that he had the rule here in question in mind. He provided that in case any "grand-nephew or grand-niece dies without leaving any direct legal descendants" his or her portion should lapse. If such a remainder were contingent it would lapse at the death of the grand-nephew or grand-niece without any direction to that effect. If it were vested, in the absence of this provision part of it would descend to the wife of the remainder-man. The testator, apparently in order to avoid having it go to anyone not lineally descended from his father and mother, directed that it should go only to the descendants instead of the heirs of the deceased remainder-men. It is also clear from the sixteenth clause that the testator intended to give vested and inheritable remainders to his grand-nephews and grand-nieces. Why, otherwise, would he provide that "such descendants shall inherit?" If the wording of the will does not clearly show that he meant his nephews and nieces "living" at the time of his death, then the terms of the will are ambiguous in that regard and therefore capable of two constructions. Under the rule just quoted from Gray, the will shows that the testator intended to create a legal rather than an illegal interest. He intended to, and in my judgment did, give a vested equitable life estate to his nephews and nieces living at the time of his death.

Mr. Justice Cartwright, also dissenting:

While the rule against perpetuities is not a rule of construction and defeats an intention, expressed in clear and exact terms, to create an interest prohibited by the rule, the existence of the rule is not to be ignored in seeking for the intention of a testator, which is the sole purpose of construction. If the language used is fairly capable of two constructions, one of which would produce a legal result and the other a result that would be bad for remoteness, the language is to be interpreted as intended to create a legal rather than an illegal interest. (Gray's Rule Against Perpetuities, sec. 633.) There is no conclusive presumption that a testator knew of the rule, and if his words will admit of but one meaning which contravenes it, it must be presumed that he did not know of it or did not have it in mind, since it cannot be presumed that he attempted to do something which he knew he could not do. On the other hand, there is no presumption that a testator did not know of the rule, and if his language can be construed so as not to destroy the interest intended to be created, the law requires such a construction. If in a particular case the provisions of the will show that the testator actually knew of the rule and had it in mind when making the will, and his language can reasonably be construed so as to avoid the objection that it offends against the rule, that construction will be preferred and adopted. (*Martelli* v. *Holloway*, 5 L. R. H. L. 532.) Both of these conditions exist in this case. General Ballance was not only learned in the law and undoubtedly understood the rule against perpetuities, but the will shows that he had the rule in view when he made the will. He fixed the precise period of time, after the death of the last surviving member of a class, for the termination of the trust and the distribution of the principal of the trust estate. There is no apparent reason why he should have fixed the exact period of twenty-one years

prescribed by the rule except that he intended not to transgress it, and to hold that he did intend to fix that limit beyond the life of some person not in being when the will would take effect, is to presume that he intended to do something which he knew was prohibited by law and would render his will void. In my opinion the will does not require a construction that the testator meant to create an illegal interest, and it should not be so construed. He provided that nine-tenths of the income should be divided semi-annually equally among his living nephews and nieces and had in mind those who were living when the will was made, as shown by the provision for a substitution of the lineal descendants of any member of the class who might die before his death or afterward. The will took effect at the death of the testator, and stood, in law, as applying to the conditions existing at that time. The will, speaking from his death, provided for the distribution of income between his living nephews and nieces and the lineal descendants of members of the class who had died or might die afterward, until the termination of the trust. It does not seem to me that the word "living" should be thrown aside as having no influence in the construction of the will. It had some meaning to the testator, and in view of his knowledge of the rule against perpetuities it could only refer to such nephews and nieces as might be living at his death. In providing for the termination of the trust and the division of the principal the testator created a new class, consisting of all his grand-nephews and grand-nieces who were lineal descendants of his father and mother. While he had used language with respect to the income which did not include after-born nephews and nieces, he adopted a new classification for the distribution of the principal, which would include the children of after-born nephews and nieces. For these reasons I do not concur in the judgment in this case.