(No. 32084.—

LAWRENCE KIESLING *et al.,* Appellants, *vs.* JANE C. WHITE *et al.,* Appellees.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

EDWARD A. KREBAUM, of Havana, and JOSEPH W. DEPEW, of Bloomington, for appellants.

MITCHELL & CALVIN, of Havana, for cross appellants Mary K. Worner *et al.*

HEYL, ROYSTER & VOELKER, of Peoria, (CLARENCE W. HEYL, and WILLIAM J. VOELKER, JR., of counsel.) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This appeal is from a decree of the circuit court of Mason County construing the will of Martin Kiesling who died testate on April 8, 1948. He left no widow and no children, but was survived by five sisters, one brother and seven nephews and nieces. The will created life estates in the testator's property for his brother and his sisters with remainders to his nephews and nieces. The principal issue is whether, upon the death of each of the life tenants, one sixth of the testator's property should be distributed to the

nephews and nieces, or whether cross remainders among the life tenants in the income from the property are to be implied, and distribution to the remaindermen postponed until the life estates have terminated.

The case turns upon the construction of paragraphs 3 and 4 of the will. By paragraph 3 of his will, Kiesling bequeathed "unto my brothers and sisters equal shares of the income of my property that I may own at the time of my death, whether the same be real estate, mixed or personal property, meaning hereby to give each one of them, my said brothers and sisters 'share and share alike' their fractional part of the income from my said property * * * [and] meaning hereby to give to my said brothers and sisters a life estate only in my said property." Then follows paragraph 4, "It is my will, and I hereby give, devise and bequeath unto my nephews and nieces 'share and share alike,' the rest and residue of all of my property after the life estates hereinabove provided in Paragraph Three (3) of this my Last Will and Testament have come to an end."

The plaintiffs, Lawrence Kiesling, the testator's brother, and his three children, filed their complaint seeking a construction of Martin Kiesling's will, and incidentally involving also the will of George Kiesling, Sr., deceased, who was the father of Lawrence Kiesling and his brothers and sisters. When the complaint was filed on April 23, 1949, Lawrence Kiesling was seventy-three years old and the ages of his five sisters ranged from seventy to eighty-seven years. By their complaint, plaintiffs proposed alternative constructions of the third and fourth paragraphs of the will of Martin Kiesling, with relief depending upon the construction adopted. Their first interpretation, and the one which they actually espouse, is that each of the brothers and sisters is to take an undivided one-sixth interest for life in the testator's property, and that as each brother or sister dies, one sixth of the property is to be distributed

among the nieces and nephews. Should the court adopt this construction, plaintiffs asked for partition of the testator's property and also of specified property devised to Lawrence Kiesling and certain of his brothers and sisters under the will of their father, George Kiesling, Sr., who died in 1908. Under the alternative construction advanced by plaintiffs, the brothers and sisters of Martin Kiesling have life estates in the income from his property, the entire estate to pass to the nephews and nieces, the ultimate remaindermen, upon the death of the last surviving brother or sister. Under this construction, cross remainders in the income are created by implication in the surviving brothers and sisters. Should the court adopt this interpretation, plaintiffs asked that a trustee be appointed to hold and manage the funds derived from the personal property of the testator, and to distribute the income therefrom to the brothers and sisters and the *corpus* to the remaindermen upon the death of the last surviving life tenant.

Four of the testator's sisters, (hereinafter defendant-appellees,) answered the complaint, denying the first alternative construction sought and asserting the validity of the interpretation favoring cross remainders among the life tenants. These defendant-appellees also filed a counterclaim in which they requested the appointment of a trustee to handle the entire estate of the testator and distribute the income and eventually the *corpus,* in accordance with the second construction proposed by plaintiffs. The counterclaim also sought a construction of the will of George Kiesling, Sr., so that interests of the various parties thereunder might be determined, and prayed for the granting of such additional relief as was appropriate.

One of the testator's nieces, (also hereinafter a defendant-appellee,) answered the complaint, asking that a construction creating cross remainders be adopted but opposing the appointment of a trustee to hold and manage the property.

The remaining sister of the testator, and her three children (hereinafter defendant-appellants,) by their answer accepted the first alternative construction, denied the validity of a construction establishing cross remainders, and questioned the right to appoint a trustee to care for and manage the personal property.

Plaintiffs and defendant-appellants answered the counterclaim of defendant-appellees, and defendant-appellees replied to both of the answers to the counterclaim. The cause was referred to a master in chancery. The master's report recommended the entry of a decree adopting the first construction of Martin Kiesling's will proposed by plaintiffs. Objections to his report were ordered to stand as exceptions, the exceptions were sustained, and a decree entered finding the equities to be with the defendant-appellees and construing the will as establishing cross remainders in the income among the life tenants. In accordance with the prayer for relief in the counterclaim, the chancellor designated a trustee to care for and manage the real and personal property of Martin Kiesling, deceased, to distribute the net income to the life tenants or to the survivor or survivors of them, and to distribute the *corpus* of the personal property to the ultimate remaindermen, the nieces and nephews living at the time of the death of the testator, upon the death of the last surviving life tenant. The trustee was also to collect the rents and profits from specified portions of the real estate of George Kiesling, Sr., deceased. Plaintiffs prosecute this appeal, and defendant-appellants cross appeal. A freehold is necessarily involved.

Before analyzing the precise language of Martin Kiesling's will, it is appropriate to isolate the factors which have heretofore been held controlling in determining whether or not cross limitations will be implied. In *Cheney* v. *Teese*, 108 Ill. 473, (where cross limitations would have been implied had the question been raised, see *Addicks* v. *Addicks*, 266 Ill. 349, 357,) the testator, after giving life estates to

his two surviving daughters, devised the remainder in fee to his grandchildren "share and share alike, to take possession only after the death of my said daughters." Stressing the word "only," this court held that under a proper interpretation of the will, the grandchildren could not be let into possession of the land until after the death of *both* daughters. The remainder to the grandchildren "share and share alike" obviously denoted *per capita* distribution.

In *Addicks* v. *Addicks,* 266 Ill. 349, the testator gave to his two sons "to share alike the rent and income" of certain property "during their natural lives" and "after the death of my said sons, [naming them]," directed that the property be sold and the proceeds "be equally divided between all of my grandchildren, share and share alike." Since the testator clearly must have contemplated one sale and one division of the proceeds among his grandchildren *per capita,* cross remainders for life were implied.

In *Martin* v. *Casner,* 383 Ill. 260, the will provided for the remainder of all the property to go to the surviving children of the life tenant, *per capita,* "at the death of all of" the life tenants. The court held that cross limitations were created.

It is clear from these authorities and others (*Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447; *Whittaker* v. *Porter,* 321 Ill. 368; *Randolph* v. *Wilkinson,* 294 Ill. 508; *Kramer* v. *Sangamon Loan and Trust Co.* 293 Ill. 553; *Fussey* v. *White,* 113 Ill. 637;) that the intention of the testator as to the time when the remaindermen are to come into use and possession has been the controlling element in determining whether cross limitations are to be implied. Unless from the language used it appears that the testator intended to postpone the enjoyment of the remainder until the death of all the life tenants, the terms "at their death" or "at their decease," referring to the death of the life tenants, will be construed to mean "as they respectively die." The question in each case is thus narrowed to ascertaining

whether there is "language in this will which evidences an intent to postpone the enjoyment of the remainder." *Martin v. Casner,* 383 Ill. 260, 268.

The intention of a testator must of course be ascertained from a consideration of his entire will, and, to the extent possible, that construction must be adopted which will uphold and give effect to all the language employed. (*Glaser v. Chicago Title and Trust Co.* 393 Ill. 447, 456; *Golstein v. Handley,* 390 Ill. 118.) Here, the provisions of paragraph 3, establishing the life estates, aid but little in determining the principal issue. Plaintiffs and defendant-appellants argue that the phrases "equal shares," " 'share and share alike,' " and "their fractional part of the income," support their view that each life tenant is to receive only the income from one sixth of the estate. But these expressions are also consistent with an intention that the testator's brothers and sisters, whatever the number living either at or after his death, should always divide the income equally. The argument that, under cross limitations, the longer-lived life tenants will receive more and thus violate this intention of equality is not persuasive; even under the alternative construction, those living the longest will enjoy greater benefits as life tenants than those less fortunate. The contention is also advanced that since eventually one brother or sister will receive all the income under cross limitations, such a construction is incompatible with the word "fractional." But a strict, technical approach to the issue is unwarranted, particularly where, as here, the testator's intention becomes apparent from other provisions of the will. *Papa v. Papa,* 377 Ill. 316, 320; *Pollock v. Pollock,* 328 Ill. 179, 192.

The fourth paragraph, since it deals with the actual division of the estate upon the death of the life tenants, is really the determinative portion of the will. This paragraph devises and bequeaths "unto my nephews and nieces 'share and share alike' the rest and residue of all my prop-

erty after the life estates hereinabove provided in Paragraph Three (3) * * * have come to an end." It indicates an intention to postpone the remainder. But plaintiffs and defendant-appellants argue that just as the phrase "after or upon their death" means "upon their respective deaths," (*Martin* v. *Casner*, 383 Ill. 260; *Whittaker* v. *Porter*, 321 Ill. 368;) so here, "after the life estates * * * have come to an end," under the same authorities, means "after the respective life estates are ended." As for the phrase, "rest and residue of all my property," they point out that if the remaindermen receive one sixth as each life tenant dies, they will ultimately take all.

It is true that the will is susceptible of that interpretation; but the alternative construction is more reasonable and appears to adhere more closely to the intention of the testator. Giving proper emphasis to the phrases, "rest and residue of *all* my property" and "life estate*s*" (Italics supplied,) the intention reflected is simply this: The testator desired that his aged brothers and sisters, whatever their number, receive the income as long as any of them lived, and that after the life estates had come to an end, all of his property should then go simultaneously to the other designated class, the nieces and nephews. Any other construction requires that the phrase "all my property" be ignored, or given a distorted and abnormal meaning. "All my property" states what is to be distributed to the nephews and nieces, and "after the life estates * * * have come to an end" states when the distribution is to be made. In our opinion the testator contemplated two classes: one, his surviving brothers and sisters who were to receive equal shares of the income so long as any lived, and, the other, his nieces and nephews who were to take the remainder. We are also of the opinion that the intention of the testator was to postpone the enjoyment of the remainder, and, accordingly, cross limitations should be implied.

Another approach leads to the same result. Without question, the remainder here, being to the "nephews and nieces 'share and share alike,' " calls for a *per capita* division. (See: *Beall* v. *Beall,* 331 Ill. 28, 34; *Cheney* v. *Teese,* 108 Ill. 473, 482-483; *Hardcastle* v. *Potter Matlock Trust Co.* 215 Ky. 136, 284 S.W. 1032; Carey and Schuyler, Illinois Law of Future Interests, pp. 391-392.) The general rule is that where distribution is postponed, a class gift will comprehend all members of the class born up to the period of distribution. (*Way* v. *Geiss,* 280 Ill. 152; *Dime Savings and Trust Co.* v. *Watson,* 254 Ill. 419; *Schuknecht* v. *Schultz,* 212 Ill. 43; *Cheney* v. *Teese,* 108 Ill. 473, 482.) Because of the possibility of the birth of new members of the class of nieces and nephews, an interpretation which would allow multiple distributions of the remainder in this case would disregard the testator's expressed intention that the remainder go to his nephews and nieces " 'share and share alike.' " The proposition has been stated generally in these terms: "* * * a determination in favor of a *per capita* division to a class in remainder requires the ambiguous words to be interpreted in favor of a single point of division upon the termination of the last of the preceding limited interests with the consequent implication of cross interests to the takers of preceding estates in the property. On the other hand, a determination that remaindermen take *per stirpes* impels no such result." (Carey and Schuyler, Illinois Law of Future Interests, p. 326.) Here, the parties agree that the interests of the remaindermen are vested, and that distribution is to be *per capita.*

Since the circuit court correctly found that distribution was to be postponed until the death of the last surviving life tenant, the latter event and not the testator's death is the critical point for determination of the class. This being so, the decree is erroneous to the extent that it found and

adjudged that the remainder was to go to the nephews and nieces in existence at the time of the testator's death, *per capita.* The decree will be modified to provide that the remainder be distributed among the nephews and nieces born up to the time of the death of the last surviving life tenant, *per capita.*

The finding of cross limitations disposes of all issues concerning partition, inasmuch as the complaint requests partition only if the construction of the will denying cross limitations is adopted. *Ashmore* v. *Hawkins,* 145 Ill. 447.

The final issue is the propriety of the appointment of a trustee to invest the personal property and to manage the real estate of the testator, and to distribute the income of the life tenants and the *corpus* to the remaindermen upon the death of the last surviving life tenant. Defendant-appellees argue that the will itself calls for the establishment of such a trust, since it bestows the income and not the property on the life tenants and since the income is to be divided equally. A gift of income, however, is equivalent to a devise of the property and merely delineates the usual life estate. (*Schmidt* v. *Schmidt,* 292 Ill. 275, 281; *Mather* v. *Mather,* 103 Ill. 607, 613.) Equal division of the income could be accomplished by appointment of an agent to handle the real estate for the life tenants, whether such an agent be one of them or a stranger. But although the will does not create the trust, its creation is within the broad powers of a court of equity. In the trial court the two principal groups of contestants both requested the appointment of a trustee for the personal property, and, in addition, one of these factions asked for a trustee to handle the entire estate. We cannot say that the chancellor, faced with this situation, abused his judicial discretion in establishing a trust as a most effective means of administering the property until the death of the aged life tenants.

The property passing under the will of George Kiesling, Sr., to certain of his children was included in the trust.

This was proper, since a construction of the will of George Kiesling, Sr., and an ascertainment of the respective interests of the parties in his estate was requested. These surviving beneficiaries under that will are also recipients as tenants in common of the income of the life estates established under Martin Kiesling's will. Partition of the land passing under the will of George Kiesling, Sr., was not sought in the event of a construction of cross limitations in the main will issue and may not therefore be properly considered here.

The decree of the circuit court of Mason County is modified by eliminating from paragraph three the phrase "in existence at the time of the testator's death," and substituting therefor the following: "born up to the time of the death of the last surviving brother or sister." The decree, as modified, is affirmed.

*Decree modified and affirmed.*