In the Matter of the TRUST AGREE-
MENT OF Edmund C. WESTERVELT
Dated September 15, 1926; First Inter-
state Bank of Northern Indiana, N.A.,
Successor Trustee, Appellant (Respon-
dent),

v.

FIRST INTERSTATE BANK OF NORTH-
ERN INDIANA; Marian Williams
Swortzel, Mervin G. Williams, a/k/a
Mervin G. Williams, Jr., Florence Nell
Kelley and David Vaughn Williams;
the Unknown, Unborn and Unascer-
tained Beneficiaries of Edmund C.
Westervelt; and the Attorney General
of the State of Indiana, Appellees
(Trustee/Petitioner and Respondents).

No. 71A04–8905–CV–193.

Court of Appeals of Indiana,
Fourth District.

March 28, 1990.
Rehearing Denied May 21, 1990.

B.E. Gates, Jr., Gates & Gates, Columbia City, Alan H. Lobley, Jerome M. Strauss, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant.

G. Burt Ford, John B. Ford, Lucinda Kil Gillis, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for appellees.

MILLER, Judge.

This appeal involves the construction of an inter vivos trust, when one of two income beneficiaries—a grandchild of the settlor—died leaving no surviving issue. The surviving granddaughter/beneficiary has three children. Under the terms of the trust, Oberlin College [Oberlin] was named a recipient of the income and/or corpus of the trust under certain circumstances—dependent upon the survival of the settlor's issue—enumerated in the trust agreement. When one of the grandchildren died, First Interstate Bank of Northern Indiana, the trustee, requested instructions concerning the disposition of the deceased grandchild's interest. Oberlin made claim to her interest asserting that, under the terms of the trust, it is entitled to her share because she left no issue. However, the probate court construed the trust as requiring the trustee to pay the total income ·from the trust (including the deceased granddaughter's share) to the surviving granddaughter for the rest of her life. Oberlin claims the probate court erred in determining that the two granddaughters/beneficiaries were joint tenants with rights of survivorship rather than tenants in common with no rights of survivorship, and that it is entitled to the deceased granddaughter's interest.

We affirm.

## FACTS

In 1926, Edmund C. Westervelt created an *inter vivos* trust consisting of certain securities[1] which contained the following relevant provisions:

The [Trustee] shall collect and receive all income paid by the present securities taken from and after this date and from securities taken instead of the securities this day turned over to said [Trustee]. Out of the proceeds of such income, said Trustee contracts and agrees to pay unto Nellie B. Vaughn, daughter of said [Settlor], the net income derived, therefrom quarterly, for and during the period of the life of said Nellie B. Vaughn. Upon the death of said Nellie B. Vaughn, if she leaves, surviving her, a child or children, then said net income is to be paid unto said child or children, during their lives, share and share alike. Upon the death of said child or children of said Nellie B. Vaughn then the principal of said fund held by second party shall be paid to the issue of said child or children, share and share alike.

In the event of the death of said Nellie B. Vaughn, leaving no child or children, or no children, the issue of her said children, then the principal of said fund shall be paid to the Trustees of Oberlin College, at Oberlin, Ohio, in trust to be invested by said trustees and the income therefrom to be used by said trustees in the aid of boys and girls taking a course, preferably of Vocational Training at Said College.

In the event of the death of the child or children of said Nellie B. Vaughn leaving no issue, then said principal of said fund shall be paid to the trustees of Oberlin College, Oberlin, Ohio, to be invested and the income used as stated in the paragraph above.

---

1. The estimated market value of the trust is $5,658,136.28.

At her death, daughter Nellie B. Vaughn [Nellie] had two surviving daughters, Florence W. Vaughn Carroll [Florence] and Marian Vaughn Williams Swortzel [Marian]. After Nellie's death the trustee paid the income to Florence and Marian. Florence died on May 20, 1988 leaving no surviving children or grandchildren. Marian is living and has three children and three grandchildren. The trustee petitioned the probate court for instructions on the disposition of Florence's interest in the trust. The probate court instructed the trustee "to retain all of the corpus in trust for the benefit of the life income interest of Marian Vaughn Williams, a/k/a Marian Williams Swortzel, and to pay to her all of the net income of the Trust after May 20, 1988, for the rest of her life."

## DECISION

Initially, we make three observations. First, Oberlin seems to be uncertain whether it is claiming to be entitled to either (1) Florence's share of the income until her sister Marian's death,[2] or (2) to one-half of the corpus. Second, this is a case of first impression in Indiana. Courts in other jurisdictions have reached various outcomes based on a variety of theories. Because of the various outcomes, we will discuss Oberlin's claim to both the income and the corpus. Third, the parties have cited numerous cases from other jurisdictions and our research has revealed numerous additional cases. However, as this court noted in *Laisure v. Richards* (1913), 56 Ind.App. 301, 308, 103 N.E. 679, 682, "the reasoning of the cases is often very refined and subtle, and involves a consideration of minute differences of language; and the final determination of each case must after all, *depend upon the intention, to be gathered from all of the language used by the particular testator whose will is before the court.*" (Emphasis in original) quoting *Wood v. Bullard* (1890), 151 Mass. 304, 333, 25 N.E. 67, 70. This statement articulates the caution courts must exercise when considering and applying cases in-

volving trusts or wills. Because the construction of such documents is dependent upon the particular language used and the surrounding circumstances, (including the law of the individual jurisdiction) courts must be careful to consider decisions within the context of the particular language and circumstances involved in each case. We note that it is for this reason that the outcomes and theories on which such outcomes are based are so variable.

■ With this caution in mind, we note that the primary consideration in construing trusts is to determine the intent of the settlor. As this court explained in *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 259–60, 286 N.E.2d 852, 861

> "The primary rule in construing trust instruments is that the court must ascertain the intention of the settlor and carry out this intention unless it is in violation of some positive rule of law or against public policy."
>
> *       *       *       *       *       *
>
> "The plain and unambiguous purpose and intention of the settlor must be determined only from the terms of the instrument itself without taking individual clauses out of context and considering same without reference to the whole instrument...." (citations omitted)

quoted in *Matter of Walz* (1981), Ind.App., 423 N.E.2d 729, 733.

Oberlin claims that when Florence died without surviving issue, it was entitled to Florence's interest in the trust. Oberlin bases its argument on the following trust provisions:

> Upon the death of said child or children of said Nellie B. Vaughn then the principal of said fund held by [Trustee] shall be paid to the issue of said child or children, share and share alike.
>
> *       *       *       *       *       *
>
> In the event of the death of the child or children of said Nellie B. Vaughn leaving

**2.** In this regard, we are also uncertain if Oberlin is claiming to be entitled to one-half the corpus

when Marian dies.

no issue, then said principal of said fund shall be paid to the trustees of Oberlin College, Oberlin, Ohio, to be invested and the income used as stated in the paragraph above.

It argues these provisions create a tenancy in common between Marian and Florence with no right of survivorship, relying on Ind. Ann. Stat. § 12174 (Burns 1926), which was in effect at the time the trust was created and which read:[3]

> "The survivor of persons holding personal property in joint tenancy have the same rights only as the survivor of tenants in common, unless otherwise expressed in the instrument."

The trustee and other beneficiaries of the trust (the descendants of the settlor) [hereinafter referred to as the Trustee] claim the provisions for the payment of income to "the child or children" of Nellie was a gift to a class and as such a right of survivorship is implied. Therefore, Marian, as the surviving member of the class, is entitled to all of the income for the rest of her life. Alternatively, it argues Marian is entitled to the income under the theory of the implication of cross remainders. It argues this outcome is in accord with the intent of the settlor.

■ Although we agree with Oberlin that Florence and Marian were tenants in common, we do not agree that this conclusion entitles Oberlin to either the income or the principal of the trust.[4] Here, the trust instrument is silent concerning whether Nellie's children are to receive the income as joint tenants or as tenants in common, therefore under Ind. Ann. Stat. § 12174 they must be considered tenants in common.

**3.** The current statute reads:
"Personal property, other than an account, which is owned by two (2) or more persons is owned by them as tenants in common, unless expressed otherwise in a written instrument." Ind.Code § 32–4–1.5–15.

**4.** We note the probate court made no finding concerning whether Marian and Florence were joint tenants or tenants in common. Oberlin merely assumes that the court's ultimate conclusion must rest on such a determination.

However, this determination does not lead to the conclusion that Oberlin is entitled to Florence's interest. Instead, it requires this court to determine the intent of the settlor which is to be found from the terms of the instrument when read as a whole.

■ Reading the instrument as a whole, the intent of the settlor is clear. The income from the trust was to be paid to Nellie during her life, then to her surviving children during their lives, and then the principal was to be divided among the issue of Nellie's surviving children, whether such issue were the issue of one, or more than one of Nellie's children.[5] Oberlin is entitled to the principal only if *no* child of Nellie has surviving issue.

■ We reach this conclusion from a careful reading of the trust provisions. The gift to Oberlin in the event Nellie should die without issue reads as follows:

> In the event of the death of said Nellie B. Vaughn, leaving no child or children, *or no children, the issue of her said children,* then the principal of said fund shall be paid to the trustees of Oberlin College. . . . [6]

(Our emphasis). This language indicates that the settlor intended Oberlin to receive the principal only if neither Nellie nor her children had surviving issue at the time of her death. In addition the use of the term "the issue of her said children" indicates that the settlor considered Nellie's children and their issue to be two distinct classes— his grandchildren and the issue of his grandchildren. As this court stated in *Laisure, supra,* 56 Ind.App. at 310–11, 103 N.E. at 683:

**5.** We note this provision may run afoul of the rule against perpetuities. *See Merrill v. Wimmer* (1985), Ind., 481 N.E.2d 1294; 61 Am.Jur.2d *Perpetuities and Restraints on Alienation* § 37. However this issue is not before us and we need not consider it.

**6.** We note this provision appears to leave a gap in the trust provisions. If Nellie's children had predeceased her leaving issue, Oberlin would not receive the principal, but there is no gift over.

"A gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons" 1 Jarman, Wills [5th ed.] 269"; *In re Kimberly's Estate* (1896), 150 N.Y. 90, 44 N.E. 945; *In re King's Estate, supra* [ (1910), 200 N.Y. 189, 93 N.E. 484].

Further indication of a class gift may be found when the recipients are designated by their relationship to the settlor, rather than individually named. *See Annot.* 61 A.L.R.2d 212 (1958) and cases cited therein.

The trust also provides:

> Upon the death of said child or children of said Nellie B. Vaughn then the principal ... shall be paid to the issue of said child or children, *share and share alike.*" (Our emphasis).

Generally, when a gift is to a group of individuals sharing the same relationship to the settlor, the use of the words "share and share alike" denotes a *per capita* distribution rather than a *per stirpes* distribution. *Laisure, supra; Kiesling v. White* (1952), 411 Ill. 493, 104 N.E.2d 291. *Per capita* is defined as denoting that "an equal share is given to each of a number of persons, all of whom stand in equal degree to the decedent, without reference to their stocks or the right of representation." BLACK's LAW DICTIONARY 1292 (Rev. 4th ed. 1968). In contrast, as this court explained in *Matter of Estate of Walters*, (1988), Ind. App., 519 N.E.2d 1270, 1272:

> Per stirpes means literally by roots or stocks; by representation. It denotes that method of dividing an intestate estate where a class or group of distributees take the share which their ancestor would have been entitled to, taking it by their right of representing such ancestor, and not as so many individuals, or as the expression is used, per capita.

In *Laisure, supra*, 56 Ind.App. at 310, 103 N.E. at 683, the court stated:

The foundation of the *per capita* rule of distribution rests in a large measure on the presumption that when the beneficiaries are in equal degrees of relationship to the testator his affection for each is equal, and therefore he will desire to benefit each equally.

(quoting *Osborn's Appeal* (1883), 104 Pa.St. 637.) Here, the issue of Nellie's children all stand in the same relationship to the settlor. We find nothing in the trust provisions to indicate that the settlor intended the issue of Nellie's children to take *per stirpes.* On the contrary, he intended that the issue, his great-grandchildren, should take equal shares. This indicates that the settlor intended the issue of Nellie's children to take equal shares of the principal without regard to the identity of their parents.

This conclusion is also supported by the settlor's repeated use of the term "child or children", when referring to Nellie's children. At the time the trust was created, the settlor could not have known how many, if any, of Nellie's children would survive her, or how many, if any, of her children would have issue.[7] This language indicates the settlor considered two possible circumstances—either one child or more than one child would survive Nellie. Thus, the income of the trust was to be paid to Nellie's surviving children whether there was only one child or several children. The language merely reflects the settlor's uncertainty concerning the number of Nellie's surviving children. In addition, the trust provisions indicate the settlor considered two other possible circumstances: (1) At her death, Nellie would have no surviving children or grandchildren, in which case the principal would be paid to Oberlin; or (2) At her death, Nellie would have no surviving children, but would have surviving grandchildren. As we noted, in this latter event—which has not occurred—there is no clear direction as to the disposition of the principal. However, it is clear that Oberlin was not to be paid the principal in preference to Nellie's grandchildren (the settlor's great-grandchildren). Therefore, we con-

---

7. The record does not reveal if Nellie had any children at the time the trust was created.

clude that Oberlin is not entitled to any portion of the corpus, as long as Nellie has surviving issue.

■ However, this conclusion does not answer the question of the proper disposition of Florence's interest in the trust. For clarification we restate the issue as follows:

What is the proper disposition of an income beneficiary's interest in a trust, where the settlor gives an income interest to two or more beneficiaries and provides for the distribution of the principal after the termination of all the life interests, but makes no provision for the disposition of one of the beneficiaries' shares during the time between that beneficiary's death and the death of all the life beneficiaries.

Here, the settlor gave the income to his grandchildren and the principal to his great-grandchildren after the death of his grandchildren. However, he made no specific provision for the disposition of a deceased grandchild's (Florence's) interest during the period of time between her death and the death of the last surviving grandchild (Marian).

When faced with this problem, courts in other jurisdictions have reached a variety of solutions. *See Annot.* 71 A.L.R.2d 1332 (1960). Some courts have ordered the income to be paid to the surviving income beneficiaries under the doctrine of implication of cross remainders, as a gift to a class, or as an implied joint tenancy. *See id.* Other courts have ordered the income to be paid to the deceased beneficiary's estate until the death of the last income beneficiary. *Id.* Other courts have ordered the income to be paid to the remaindermen. *Id.* Finally, some courts have ordered the income to be accumulated until the death of the last income beneficiary. *Id.*

We have examined the cases cited in *Annot.* 71 A.L.R.2d 1332 (1960) and other cases cited by the parties. Once again we are struck by the difficulty encountered in applying seemingly analogous cases to a case of this kind. Because of the great variety of language used in trusts and similar documents it is difficult, if not impossible, to find any authority which is directly on point. Therefore, we will not engage in a lengthy discussion of such cases. Instead, we will return to the primary consideration in construing a trust—the determination of the intent of the settlor.

We conclude that the settlor intended the gift of the income to Nellie's children to be a gift to a class and that all the income was to be paid to the members of such class, regardless of their number. We further conclude that although Marian and Florence, the members of this class, were tenants in common, in order to effectuate the intent of the settlor, the total net income must be paid to Marian for the rest of her life under the implication of cross remainders.

Cross remainders are defined as:

Where land is devised or conveyed to two or more persons as tenants in common, or where different parts of the same land are given to such persons in severalty, with such limitations that, upon the determination of the particular estate of either, his share is to pass to the other, to the entire exclusion of the ultimate remainder-man or reversioner until all the particular estates shall be exhausted, the remainders so limited are called "cross-remainders."

BLACK'S LAW DICTIONARY, 1456 (Rev. 4th ed. 1968). Cross remainders may also be created in personal property, 28 Am. Jur.2d, *Estates,* § 230, and may arise by implication in wills or *inter vivos* trusts. *Id.* §§ 231, 232.

The controlling factor in determining whether cross remainders will be implied is whether the settlor intended the whole estate to go over at one time. *Id.* § 230; *Kiesling, supra.*

Here, the trust states:

Upon the death of said Nellie B. Vaughn, if she leaves, surviving her, a child or children, then said net income is to be paid unto said child or children *during their lives,* share and share alike. Upon the death of said child or children of said Nellie B. Vaughn then the principal ...

shall be paid to the issue of said child or children, *share and share alike*. (Our emphasis). The emphasized language indicates that the settlor intended the principal to be distributed at one time—upon the death of the last income beneficiary. As we noted, the use of the term "child or children" merely denotes the settlor's uncertainty concerning who would survive Nellie. The addition of the words "during *their* lives" indicates the settlor intended the income to be paid to Nellie's children as long as any such children were living. This conclusion is further supported by the use of the term "share and share alike" in reference to the portion of the principal to be taken by Nellie's grandchildren. As we explained, this language indicates a *per capita* distribution of the principal to a class—Nellie's grandchildren. As the Illinois Supreme Court explained in *Kiesling, supra*, 104 N.E.2d at 295:

> "a determination in favor of a *per capita* division to a class in remainder requires the ambiguous words to be interpreted in favor of a single point of division upon the termination of the last of the preceding limited interests with the consequent implication of cross-interests to the takers of preceding estates in the property. On the other hand, a determination that remaindermen take *per stirpes* impels no such result." (Carey and Schuyler, Illinois Law of Future Interests, p. 326).

We conclude that the settlor intended the principal to be distributed as a whole upon the death of the last of Nellie's children. Therefore, cross-remainders will be implied

and Marian is entitled, as the trial court held, to the total net income from the trust for the rest of her life.

Oberlin contends that Ind.Ann.Stat. § 12174 (Burns 1926) which, as we explained, requires Marian and Florence to be deemed tenants in common, compels a different result.[8] We disagree. Cross-remainders are implied when the income beneficiaries hold their interests as tenants in common. 28 Am.Jr.2d, *Estates* § 230, *Kiesling, supra*. In addition, IND. CODE § 30–4–1–3 states:

> "The rules of law contained in this article shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust. If the rules of law and the terms of the trust conflict, the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize."

We find nothing in Ind.Ann.Stat. § 12174 to clearly prohibit or restrict an implication of cross remainders.[9]

Affirmed.

STATON and CONOVER, JJ., concur.

---

8. We note that, even if this statute did compel a different result, Oberlin would not be entitled to the income, because, when read as a whole, the trust clearly indicates Oberlin receives nothing so long as there are surviving issue of Nellie's children.

9. The Trustee and Oberlin have cited a number of cases involving the application of such a statute. All of the cases cited are distinguishable on a wide variety of grounds. It is unnecessary to add to this opinion a lengthy discussion of these cases. However, we note none of the cases involved a gift of income to a class. In *Philbert v. Campbell* (1927), 317 Mo. 556, 296 S.W. 1001, the court, applying such a statute, held that a surviving life tenant could not prevent partition of real property when the other life tenant predeceased the testator. However,

the court specifically held that the gift of a life interest in real property was not a gift to a class, when the beneficiaries—the testator's wife and niece—were not in the same relationship to the testator, and were individually named in the will. In *Holloway v. Burke* (1935), 336 Mo. 380, 79 S.W.2d 104, real property was devised to the brothers and sisters of the testator. One sister predeceased the testator. The court held that the deceased sister's heirs were not entitled to her share of the property, but also noted that if she had died after the testator, the court would have applied a statute similar to Ind.Ann.Stat. § 12174. However, this case involved a gift of real property in fee simple, not a gift of income. Our research has revealed no case in which such a statute was applied so as to deprive an income beneficiary of the deceased beneficiary's

income interest, when the gift of income was to    a class.